(88 South. 156)

WORTHINGTON v. CLEVELAND LUMBER CO. (6 Div. 620.)

(Court of Appeals of Alabama. June 29, 1920. Rehearing Denied Nov. 9, 1920.)

ACCORD AND SATISFACTION 27—QUESTION OF WHETHER AMOUNT WAS DISPUTED OR UNLIQUIDATED HELD FOR THE JURY.

Where a buyer claiming a right to make certain deductions which had not previously been brought to the seller's attention mailed the seller a check for the balance accompanied by a receipt in full to be signed by the seller, and the seller deposited the check, but refused to sign the receipt or to accept the check in full payment, it was a question for the jury whether the amount in excess of that paid was disputed or unliquidated so as to create an accord and satisfaction.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action by the Cleveland Lumber Company against Thomas Worthington in assumpsit. Judgment for the plaintiff, and defendant appeals. Affirmed.

Certiorari denied 88 South. 159.

Worthington had a contract with a coal company to build a dock on the Warrior river within a stipulated time and carrying heavy penalties for a failure to complete the work within the time. Worthington had a subcontract with Gillespie for driving piles and doing the bridge construction and had to warrant Gillespie that his crew would not be idle for want of material. Worthington let a contract to the Cleveland Lumber Company to furnish him with the necessary piles and other wood materials, explaining the penalties he was under, his warranty to Gillespie, at the time the contract was closed. But this notice of special damages was de-

nied by the plaintiff. In a letter closing the contract, it was stated that the 12x12's must be delivered within 2 weeks, and the balance of the material within 30 days from the receipt of the order. Worthington claimed shortage amounting to $75 and $124.63, paid to Gillespie for idle time for his crew. Worthington prepared voucher deducting what he claimed to be losses and sent check to cover. The voucher was not signed and returned, but the check was cashed.

The following is invoice 1176, the voucher, and the check referred to in the opinion of the court:

Cleveland Lumber Company, Wholesale Lumber.

\ Duplicate Invoice. No. 1176.

Jasper, Ala., Aug. 24, 1915.
. Sold to Thos. Worthington, Birmingham, Ala. Delivered by water to Cordova.

| | | | Cordova, Ala. | | |
|---|---|---|---|---|---|
| 4 | pcs 1x6—14 | 80% heart 11 pine | 28 feet | $16.00 | $ 0.45 |
| 78 | " 2x4—3 | | 156 " | | |
| 36 | " 2x4—14 | | 336 " | | |
| 144 | " 3x8—14 | | 4,032 " | | |
| | | | 4,524 | 17.00 | 76.91 |
| 4 | 3x8—28 | | 224 | 19.50 | 4.37 |
| 42 | 3x10—14 | | 1,470 | | |
| 2 | 3x10—14 | | 70 | | |
| 19 | 3x10—18 | | 855 | | |
| 21 | 3x10—10 | | 1,050 | | |
| 4 | 3x10—22 | | 210 | | |
| | | | 3,855 | 18.00 | 65.79 |
| 78 | 4x4—4 | | 416 | | |
| 50 | 4x8—18 | | 2,400 | | |
| 57 | 6x6—12 | | 2,052 | | |
| 16 | 6x6—14 | | 672 | | |
| 17 | 6x8—8 | | 544 | | |
| 32 | 6x8—14 | | 1,792 | | |
| 4 | 6x8—16 | | 256 | | |
| | | | 8,132 | 17.00 | 138.24 |
| 4 | pcs 6x8—28 | | 448 | | |
| 4 | " 30 | | 480 | | |
| | | | 928 | 19.50 | 18.10 |
| 4 | " 22 | | 342 | 18.00 | 6.16 |
| 3 | 8x8—10 | | 160 | 17.00 | 2.72 |
| | | | 17,993 | | $312.74 |

Extra for delivery by water
17993   .50     8.99

$321.73

Shipped to Thos. Worthington, B'ham, Ala. Delivered by water to Cordova, Ala.

Exhibit D-4.

Voucher, September 27th, 1915.

Thomas Worthington, Birmingham, Ala., to Cleveland Lumber Co., Jasper, Ala.

Examined by TW
Approved by TW

August 24. Corrected invoice attached.......$247 36
Sept. 27. Less amount paid E. W. Gillespie,
     extra cost caused by failure to
     deliver piles as per attached
     statement ........................ 124 63

      Balance due ...............$122 73

Received Sept., 1915, of Thomas Worthington, one hundred twenty-two 73/100 dollars in settlement of above amount.

———————

Read this:
Please date and receipt this voucher, and return without delay, to above address.

If amount is not satisfactory, return papers without alterations for correction.

Indorsed on the back thereof is as follows:
Voucher No. 3788. Thomas Worthington, Birmingham, Ala. · In favor of Cleveland Lumber Co., Jasper, Ala. Date Sept. 27, 1915.
Distribution: Cordova Work, $122.73. % Timber.

Check.

No. 3788.
     Birmingham, Ala., Sept. 28th, 1915.

       Thomas Worthington.

Pay to the order of Cleveland Lumber Company $122.73 one hundred twenty-two 73/100 dollars.      Thomas Worthington.
To First National Bank, Birmingham, Ala.
Invoice August 24th, 1915.

Indorsements on back:
Pay to American Trust & Savings Bank, Birmingham. Cleveland Lumber Company, per H. M. Appleby.
Paid through Clearing House.
          Oct. 2, 1915.    12.

J. S. Coleman, Vassar L. Allen, and Brenton K. Fisk, all of Birmingham, for appellant.

The pleas were in recoupment. 13 Ala. 587; 105 Ala. 240, 16 South. 720; 24 R. C. L. 793. The creditor cannot retain the money and repudiate the conditions. 147 Ala. 561, 41 South. 78; 195 Ala. 579, 71 South. 97; 95 Ala. 328, 10 South. 354. The payment by check, having been accepted, accompanied by the voucher, as it was, was valid and final. 94 Ark. 158, 126 S. W. 394, 27 L. R. A. (N. S.) 439, and cases cited in note; 21 R. C. L. 8.

W. F. Finch, of Jasper, for appellee.

This case should be affirmed. 7 Ala. App. 335, 62 South. 245; 9 Ala. App. 383, 63 South. 788; 187 Ala. 310, 65 South. 816.

MERRITT, J. The facts in this case are admittedly the same as when the case was before the court on the former appeal. Worthington v. Cleveland Lumber Co., 16 Ala. App. 614, 80 South. 688. On the former appeal the case was reversed and remanded because of error in giving a certain written charge which did not involve the questions raised in the instant case. The defendant pleaded (a) the general issue, (b) payment, (c) accord and satisfaction, and (d) recoupment; and from a verdict and judgment for the plaintiff, the defendant appeals. The insistence of the defendant is that he should have had the benefit of the general charge upon the one or the other of the last two pleas; but, as we view it, the case must stand or fall on the plea of accord and satisfaction.

While this particular defense does not appear to have been one of the main points of contention in the former appeal, yet in the opinion we find the following by Judge Bricken:

"It is clear that defendant Worthington admitted an indebtedness on said invoice of $122.73, the amount of said check. No receipt was signed by plaintiff accepting this in full settlement of said account as shown by said invoice. If, in fact, said defendant owed plaintiff more than that amount, this payment could not operate as a consideration for an extinguishment of such excess amount. On the other hand, if defendant's claim of recoupment was right in kind and amount and had not received the timbers for which he made deduction in his statement, and the amount there stated was correct, then the check did operate as a payment. If these deductions were more than were properly allowable, then plaintiff was entitled to recover the excess due it. Under the evidence and the charge of the court, it was for the jury to say whether or not the damages claimed by defendant by way of recoupment were proper and allowable. They were not such damages as would naturally flow from the failure to deliver the timber on time; and plaintiff would not be liable therefor, unless it had notice of the special circumstances under which the defendant Worthington was laboring at the time of the delay, out of which the damages complained of would naturally spring. On this point the evidence was in conflict, and the matter properly went to the jury."

As the facts tended to show, the plaintiff was under contract to deliver certain timbers, piles, and lumber to the defendant within a certain time, and on failure to do so the defendant reserved the right in the contract to purchase the timbers in open market. Certain of the timbers and lumber was delivered to the defendant, and settlement of the same was amicably had, and no question arose except as to invoice dated August 24, 1915, designated as "invoice 1176."

It appears that this invoice was mailed to, and in due course of mail received by, the defendant and that the same shows $321.73 claimed to be due by defendant to the plaintiff for timber and lumber, an error in calculation being noted, and that the same should be $322.41. It appears further from the testimony that the defendant thereupon prepared an itemized statement claiming $75 for shortages and also showing that he had paid one Gillespie, a bridge contractor who was using the timbers furnished by plaintiff in fulfilling a contract defendant had with a third party to build a trestle or coal tipple, the sum of $124.63, on account of time lost by Gillespie and his crew while waiting for plaintiff to furnish material. A voucher bearing date September 27, 1915, and embodying the above deductions, and defendant's check for the balance as shown in this voucher and defendant's letter of September 28, was altogether mailed to and received in due course of mail by the plaintiff. The said invoice 1176, the voucher, and check will be set out in the report of this case by the reporter.

The plaintiff says that it immediately notified the defendant by letter and in person, that it did not accept the check as a settlement of its account.

Was, then, the invoice dated August 24, 1915, designated as "invoice 1176," settled, or do the facts work an accord and satisfaction? In a determination of this, the first question is whether the amount of the claim beyond the $122.73 was disputed or unliquidated. The plaintiff's testimony tends to show that it had no notice before the voucher of September 27, 1915, was received by it, this being received with the check, that the defendant was charging it with the time lost by Gillespie's crew, or had sustained any damage on account of a failure to deliver in time a small portion of the timber contracted for. The defendant says that the matter was in dispute for that one Russell, one of the plaintiffs, stated in his testimony that he disputed the claim of Mr. Worthington as soon as he saw it, and further that the statement of Mr. Worthington "raised the question between us."

We may state that there appears nothing further from the testimony to indicate whether or not this matter was in dispute.

The second question is whether the defendant was discharged by what was written and done between the parties, taken in connection with the collection by the plaintiff of the check under the circumstances shown by the evidence. While it cannot be said that the matter should be in dispute for any particular length of time, so as to say as a matter of law that the matter was in dispute, yet it is noticeable that in most, if not all, the recent cases in our jurisdiction, the matter of the overcharge has been a matter of correspondence or contention for some time before acceptance and has been one or two times turned down before acceptance, which fact in all those cases had emphasized the conclusion that the matter was *fairly* in dispute. Here we have a party who is sought to be charged with items that were never in controversy, and had never before been brought to his attention, and, when his corrected bill is returned, a check is inclosed for a part of the amount, which is admitted to be due and which purports to be for payment in full of the account, according to the corrected voucher, and a receipt is inclosed for the plaintiff to sign, which purports to be for settlement in full. The check is deposited and account is credited with the amount of the check, and the plaintiff refuses to sign the receipt, and informs defendant that he will not accept the check in full payment of the account, but has credited his account with the amount of the same. The facts in this case are different from those in the case of Brack-

in v. Owens Horse & Mule Co., 71 South. 97, 195 Ala. 579, the distinction, we think, being well stated by the trial judge, who says:

"In the instant case there was no dispute in the demand until Worthington made up a claim of damage and attached a check thereto for the balance. The lumber company cashed the check, and in due course of business took up the sufficiency. One of the witnesses expressed it that 'the sending of the check with the claim for damages raised the dispute.' In the Brackin Case there was a dispute all the time as to whether the consideration for the mule was $190 or $290, and the note evidenced the entire indebtedness and when payment made was accepted. In the case at bar, the amount admitted to be due was paid. A release to sign was inclosed. The company cashed the check, declined to sign the release, and in due course took up the sufficiency of the same."

We are of the opinion that the trial court was right in submitting all of the testimony as to what was written, said, and done by the parties to the jury for it to determine from the testimony as to whether these things constituted an accord and satisfaction, and, the jury having rendered a verdict for the plaintiff, we do not believe there was error in refusing to grant a new trial.

The judgment is affirmed.

Affirmed.