(104 So. 33)

## ST. LOUIS & S. F. RY. CO. v. GEORGIA, F. & A. RY. CO. (6 Div. 119.)

(Supreme Court of Alabama. March 26, 1925. Rehearing Denied April 30, 1925.)

**1. Trover and conversion ⬅1—Conversion defined.**

Conversion may consist, not only of appropriation of property to one's own use, but in its destruction, or in exercising dominion over it in exclusion of owner's rights.

**2. Carriers ⬅94(5)—Evidence as to number and time tender of cars to carrier for delivery to plaintiff sufficient for jury.**

In trover for coal delivered to defendant carrier for plaintiff, evidence of number and contents and time of tender of cars held sufficient for jury.

**3. Carriers ⬅94(3)—Testimony as to routine manner of offering coal to carrier's agent for shipment held proper to show custom.**

In action against carrier for conversion of coal, testimony of consignor as to routine manner of offering coal for shipment held proper to show usage and custom as to delivery to carrier binding on carrier without actual notice of acceptance.

**4. Trover and conversion ⬅16—Right of property and possession must concur in plaintiff.**

To support trover action, right of property, general or special, and possession, or immediate right to possession, must concur in plaintiff at time of conversion.

**5. Carriers ⬅39—Common carrier of goods bound to transport all goods properly offered for that purpose.**

Common carrier of goods is bound to transport all goods properly offered for that purpose.

**6. Estoppel ⬅63—Carrier, having duty to issue bill of lading, estopped from setting up failure to do so.**

In action against carrier for conversion of cars of coal, for which it refused to sign bills of lading, naming plaintiff as consignee because it desired the coal for its own use, where such delivery was shown as to place upon carrier the duty of issuing bills of lading, carrier held estopped from setting up that bills were in fact not issued, thereby, as claimed, defeating plaintiff's title.

**7. Carriers ⬅76—Intended consignee of coal converted by carrier held to have sufficient right of property and possession to support action.**

Though coal company, after tendering cars of coal and bills of lading, naming plaintiff as consignee, which carrier refused to sign, acquiesced as matter of necessity in carrier's acts in taking coal for its own use, or diverting it to others, right of property and right of possession were sufficiently perfected in plaintiff to support action for conversion.

**8. Carriers ⬅94(3)—Punitive damages held allowable where taking was willful and deliberate.**

In action by purchaser of coal against carrier for conversion, where taking was willful

and deliberate, and continued over a volume of protests, and after knowledge of plaintiff's need of it, punitive damages *held* allowable.

**9. Carriers &#9758;94(3)—Carrier willfully taking coal not excused from liability for punitive damages on ground of prior right.**

In action by purchaser of coal against carrier for conversion which was willful, deliberate, and in utter *disregard* of plaintiff's rights and needs, carrier, which had contract with same seller for coal, *held* not excused from liability for punitive damages by virtue of any priority of rights, especially where it had received, not only its own maximum quantity, but in excess thereof, and to exclusion of plaintiff.

**10. Accord and satisfaction &#9758;27 — Compromise and settlement &#9758;24—Recital in receipt for payment for conversion of 15 cars of coal, "per bills in full," not conclusive.**

Where carrier admitted liability for conversion of 15 cars of coal, but denied it entirely for other cars, recital in receipt for payment for 15 cars that it was "per bills in full" *held* not conclusive that both claims were included therein, but question could properly be left for jury.

**11. Trover and conversion &#9758;49 — Damages for highest price between conversion and trial.**

Ordinarily, measure of damages in trover is fair market value of property at time of conversion, but, if value fluctuates after conversion, it may be fixed at highest price between time of conversion and trial.

**12. Carriers &#9758;94(5)—In suit against carrier for conversion refusal of misleading charge not error.**

In action against carrier for conversion of coal, where defendant admitted confiscation of 15 cars, instructions referring to 12 cars *held* misleading, and therefore refusal was not error.

**13. Carriers &#9758;91 — Buyer's right of action against carrier for conversion of coal not affected because seller subsequently consigned coal to another.**

Where carrier refused to accept coal for transportation to buyer, fact that seller under compulsion subsequently billed coal to another did not affect or destroy buyer's right of action against carrier for conversion.

**14. Carriers &#9758;94(4)—Damages for conversion of goods consigned to profitable market is value at destination, less freight.**

Where goods are converted by carrier to profitable market, where they would arrive in usual course of things, measure of damages for conversion by carrier is value at point of destination, less freight.

**15. Trover and conversion &#9758;32(4)—Affirmative charge properly refused as to counts for conversion naming dates under videlicet.**

Though counts for conversion naming dates under *videlicet* sought to recover for conversion subsequent to dates shown by evidence, affirmative charge was properly refused.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action in trover by the Georgia, Florida & Alabama Railway Company against the St. Louis & San Francisco Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The portion of the oral charge of the court, made the basis of the tenth assignment of error, is as follows:

"And pursuant to such contract the mining company did tender such coal properly loaded in cars supplied by the railroad company for that purpose, that it would be the duty of the company to accept such shipments, you would be authorized to find that the title to such coal, that is to say, that the plaintiff had such title or interest in the coal as would be sufficient to maintain a suit for conversion, if you find there was conversion."

These charges were refused to defendant:

"A. The court charges the jury that, unless you believe from the evidence that the defendant not only refused to issue bills of lading on cars of coal to the plaintiff company, but also took for its own use such cars of coal as to which it so refused to sign bills of lading, if you believe from the evidence that it did so, then you cannot find that the defendant converted any coal as to which it refused to sign such bills of lading.

"B. The court charges the jury that, if you believe from the evidence that the defendant's agent at Dora, when requested to do so by the Pratt Consolidated Coal Company, refused to sign a bill of lading for any car containing coal for shipment to the plaintiff company, yet if you further believe from the evidence that the Pratt Consolidated Coal Company thereafter delivered to the defendant another bill of lading consigning the coal to some person or company other than the defendant, and the defendant signed such bill of lading, then you cannot find that as to any such coal contained in any car covered by such bill of lading the defendant converted the same.

"C. The court charges the jury that, if you believe from the evidence that the defendant's agent at Dora refused to sign a bill or bills of lading for any car or cars containing coal for shipment to the plaintiff company, but also believe from the evidence that following such refusal, if you believe from the evidence there was such refusal, the Pratt Consolidated Coal Company requested the defendant to sign a bill or bills of lading for any such car or cars for shipment to some other person, company, or corporation than the defendant, and that the defendant did so, then the defendant did not convert any such coal."

"F. The court charges the jury that, even though you may find from the evidence that the defendant refused to issue bills of lading at the request of the Pratt Consolidated Coal Company on cars containing coal for shipment to the plaintiff, yet the court further charges the jury that you could not find that the defendant converted the coal contained in any such cars, unless you further find from the evidence that the defendant also took the coal in such cars for its own use."

"J. If you believe from the evidence that the Pratt Consolidated Coal Company requested

the defendant's agent at Dora to sign bills of lading in September, 1920, on cars of coal for shipment to the plaintiff, and that the defendant's agent, refused to sign such bills of lading, and if you further believe from the evidence that thereafter the Pratt Consolidated Coal Company voluntarily surrendered such cars to the defendant company for its own use, then you would not be authorized to find from the evidence that any such coal 'ever 'became the property of the plaintiff, for the taking or conversion of which the plaintiff would be entitled to recover damages of the defendant in this case."

Cabaniss, Johnston, Cocke & Cabaniss and Sumner E. Thomas, all of Birmingham, for appellant.

Plaintiff did not have title and immediate right of possession to the coal, and the affirmative charge for defendant should have been given. 35 Cyc. 195; 23 R. C. L. 1425; Southern Creosoting Co. v. Whitfield, 130 Miss. 476, 94 So. 452; Hutchinson on Carriers (3d Ed.) § 119; Stapleton v. Railway Co., 133 Mich. 187, 94 N. W. 739; Summers v. Wagner, 87 Mich. 272, 49 N. W. 570; Denver, etc., R. Co. v. Peterson, 97 Am. St. Rep. 87; Shriner v. Meyer, 171 Ala. 112, 55 So. 156, Ann. Cas. 1913A, 1103; 1 Williston on Sales (2d Ed.) 583. It was necessary that the plaintiff prove the material allegations of his complaint, notwithstanding the use of a videlicet. Marks v. Lahey, 3 Bing. N. Cas. 408, 32 E. C. L. 181; U. S. H. & A. Ins. Co. v. Savage, 185 Ala. 232, 64 So. 340. The voucher of defendant, accepted by plaintiff, constituted an accord and satisfaction. Ex parte Sou. Cot. Oil Co., 207 Ala. 704, 93 So. 662. The charges eliminating punitive damages should have been given. Howton v. Mathias, 197 Ala. 457, 73 So. 92.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellee.

Delivery of goods to a carrier consigned to the buyer is delivery to the buyer and passes title. 4 Elliott on R. R. §§ 2116, 2127; Bradford v. Marbury, 12 Ala. 520, 46 Am. Dec. 264; Minge v. Barrett, 14 Ala. App. 468, 70 So. 962; 35 Cyc. 194; Hutchinson on Carriers (3d Ed.) § 125; St. L. & S. F. v. Blocker, 76 Okl. 279, 184 P. 584; Cox v. Andersen, 194 Mass. 136, 80 N. E. 236; Glauber Mfg. Co. v. Voter, 70 N. H. 332, 47 A. 612. Acceptance by the carrier is not necessary. Sou. Ry. v. Johnson, 2 Ga. App. 36, 58 S. E. 333; Stapleton v. Grand Trunk, 133 Mich. 187, 94 N. W. 739; Lord v. M. C., 105 Me. 255, 74 A. 117; Nichols v. Smith, 115 Mass. 332. Confiscation of fuel by railroads is discountenanced. M. & O. v. Zimmern, 206 Ala. 37, 89 So. 475, 16 A. L. R. 1352; Zimmern v. Sou. Ry., 207 Ala. 169, 92 So. 437. Trover may be maintained by one having a general property right with right of immediate possession. 4 Mayfield's Dig. 994. Recovery of the value of the coal at destination was proper. Zimmern v. Sou.

Ry., supra. Exemplary damages may be imposed at the discretion of the jury, where the conversion is accompanied by outrage. Plummer v. Hardison, 6 Ala. App. 525, 60 So. 502; Howton v. Mathias, 197 Ala. 457, 73 So. 92.

GARDNER, J. The appeal is from a judgment recovered by the appellee against the appellant in an action of trover for the conversion of certain coal tonnage in cars on appellant's railway.

There were numerous counts claiming usual damages on conversion, alleging the time as well as the tonnage under videlicet, and other counts of the same character, but claiming punitive damages in addition. The case was tried upon these various counts and defendant's plea of the general issue, in short, by consent. The plaintiff, Georgia, Florida & Alabama Railway Company, is a corporation operating a short line railroad, with its principal office in Bainbridge, Ga. In September, 1920, this company had a contract with the Pratt Consolidated Coal Company at Dora, Ala., for its coal supply for the year beginning July 1, 1920, and ending June 30, 1921, calling for a minimum and maximum quantity of coal to be delivered "in approximately equal daily quantities, excluding Sundays." The price was fixed at $2.93 per ton, "f. o. b. cars at the No. 10 mine of the seller, located in Walker county, Ala.," and to be subsequently paid for. The coal company (to so designate it for brevity) had four mines in operation at or near Dora, Ala., at this time, one of which was the No. 10 mine, above referred to. Plaintiff railway company was dependent solely upon this contract for its supply of coal with which to operate its road. The defendant railway company at the same time had a contract for a minimum and maximum supply of coal with said coal company, to be furnished from any four of the mines at or near Dora, but this contract was not its sole dependency for coal and its road traversed coal territory.

In fulfilling the contract with the plaintiff railway, it was the custom of the coal company to load and weigh the cars at the mine, and have them moved on the tracks of the defendant company to Burgin, near the station, write out the bills of lading showing a consignment of the coal to plaintiff railway company at Bainbridge, Ga., and then carry these bills of lading to defendant's agent for signature.

In September, 1920, it is admitted by the defendant that it confiscated to its own use 15 cars of coal so loaded and consigned to the plaintiff at Bainbridge, and upon some of the bills of lading there was written by the agent the words, "Confiscated for company fuel." As to these 15 cars, defendant paid plaintiff the contract price therefor, and we do not understand that any recovery for

these particular cars is here involved. Plaintiff made vigorous protest by letters, telegrams, and personal efforts by its agents who were sent to investigate and remedy the situation, and requested the intercession on its behalf of the Interstate Commerce Commission. Defendant was repeatedly informed of plaintiff's great need, and that, unless defendant permitted the coal company to ship plaintiff coal, the road must cease operation, as only two days supply was on hand. The confiscation of these 15 cars of coal was in violation of the orders of the Interstate Commerce Commission, and such practice of confiscation was unqualifiedly condemned by this court in M. & O. R. R. Co. v. Zimmern, 206 Ala. 37, 89 So. 475, 16 A. L. R. 1352.

Following the numerous protests, to which reference has just been made, defendant company ordered its agents to refuse to sign bills of lading for commercial shipments by the coal company until defendant's order had been protected. It may be here noted that coal to be shipped the plaintiff was not strictly a "commercial shipment," but defendant's agents made no distinction between "commercial shipments" and those to other roads, at least so far as plaintiff's railway was concerned; the evidence disclosing that all shipments of coal were considered "commercial" by defendant except its own fuel.

The coal company had previously joined in plaintiff's protest against defendant's methods, and in some of the correspondence (admitted in evidence without any limitations thereto [Ala. F. & C. Co. v. Ala. Penny Savs. Bk., 200 Ala. 337, 76 So. 103]) it appears defendant was receiving its maximum supply of coal under its contract, and in some instances in excess thereof, though there is testimony to the contrary. But the coal company continued to load and weigh the cars, place them on the tracks, prepare bills of lading consigning the shipment to plaintiff at Bainbridge, Ga., and tender to the agent at Dora for signature. In obedience to the order referred to, however, the agent declined to so sign the bills of lading and so accept the shipment tendered. The witness Randolph, in charge of the shipments as agent of the coal company, testified that defendant took the coal, shipment of which to plaintiff was so tendered, but whether all of this coal was so taken by defendant or a portion thereof diverted by defendant to other roads is not material.

[1] "The fact of conversion does not necessarily import an acquisition of property in the defendant." Howton v. Mathias, 197 Ala. 457, 73 So. 92. Conversion may consist, not only in an appropriation of the property to one's own use, but in its destruction, or in exercising dominion over it in exclusion or defiance of plaintiff's rights. McGill v. Holman, 208 Ala. 9, 93 So. 848, 31 A. L. R. 948; Conner v. Allen, 3 Ala. 515.

[2] The witness Randolph was uncertain as to the exact number of cars so tendered and refused shipment. No record was kept. Nor was he certain as to the days. As to his best recollection, however, the number of cars so tendered by him, and rejected by defendant, in September, 1920, he stated "at least 20, or possibly more," and the period of refusal was between the 10th and 24th of September. As to the tonnage, the average was 45 tons to the car, according to his "best judgment and recollection." The exact number of cars tendered each day he was unable to state, but gave his best recollection as to some days the number so tendered. Much stress is laid upon the indefiniteness of the testimony of this witness.

We have read his testimony with painstaking care, and the conclusion has been reached that it was sufficiently definite, though depending upon recollection, and unsatisfactory, for the consideration of the jury, and that the affirmative charge based upon this theory was properly refused; nor was the testimony of this witness due to be excluded upon this ground. Very clearly, the total number of cars, so rejected was sufficiently stated by the witness as 20, and the dates were alleged under videlicet. Howton v. Mathias, supra.

As we read and understand the brief of learned counsel for appellant, defendant does not rely for defense to this action upon a justification of this practice, admittedly indulged in at the time complained of, but to defeat plaintiff's recovery rests largely upon a failure on the part of plaintiff to show such right and title to the coal so tendered and rejected as will support the action of trover. Defendant insists that under plaintiff's contract title to the coal did not pass until there had been a delivery of the coal to defendant carrier, and possession completely passed out of the seller, and that delivery is not complete until accepted by the carrier, citing 23 R. C. L. p. 1425; 35 Cyc. p. 195; Southern Creosoting Co. v. Whitfield, 130 Miss. 476, 94 So. 452; Hutchinson on Carriers (3d Ed.) § 119; Stapleton v. Ry. Co., 133 Mich. 187, 94 N. W. 739; Denver & R. G. R. Co. v. Peterson, 30 Colo. 77, 69 P. 578, 97 Am. St. Rep. 87; Williston on Sales (2d Ed.) p. 583.

[3] On the other hand, plaintiff insists that, aside from the fact that its contract with the coal company called for delivery of the coal f. o. b. the mines of the coal company, there may be proof of usage and custom as to delivery to the carrier binding on the carrier without actual notice of acceptance, and that the evidence as to such custom was sufficient to make the question of delivery one for the consideration of the jury. Montgomery and Eufaula R. Co. v. Kolb, 73 Ala. 396, 49 Am. Rep. 54. To this end we think the plaintiff was properly permitted to ask the witness Randolph to state his "routine manner of

offering the coal" to defendant's agent for shipment. Plaintiff further insists delivery to the carrier is complete when it appears the seller has done all that he is required to do by the usage of business to further the shipment, and it then becomes the duty of the carrier to do what is necessary to put the goods in transitu. 1 Hutchinson on Carriers, § 125; Murphy's Case, 60 Ark. 333, 30 S. W. 419, 46 Am. St. Rep. 202; Southern Ry. Co. v. Johnson, 2 Ga. App. 36, 58 S. E. 333; Nichols v. Smith, 115 Mass. 332.

[4, 5] We are persuaded, however, that, all other considerations aside, the contention of defendant is unsound, and that it overlooks the nature of the action as well, also, the duty of defendant under the undisputed proof, as a common carrier. To support the trover action "the right of property, general or special, and possession, or an immediate right of possession, must concur in the plaintiff at the time of the conversion." Johnson v. Wilson, 137 Ala. 468, 34 So. 392; Booker v. Jones, 55 Ala. 266; Elmore v. Simon, 67 Ala. 526; Barker v. Lewis & Co., 118 Am. St. Rep. 141; 26 R. C. L. pp. 1132, 1133. "Trover is in some respects an equitable action." Shriner v. Meyer, 171 Ala. 112, 55 So. 156, Ann. Cas. 1913A, 1103. "The action of trover * * * appears competent, in many respects, to investigate and determine the equity of the case." Bates v. Murphy, 2 Stew. & P. 165. The defendant as a common carrier of goods was in duty bound to transport all goods that were properly offered for that purpose. A. C. L. R. R. Co. v. Rice, 169 Ala. 265, 52 So. 918, 29 L. R. A. (N. S.) 1214, Ann. Cas. 1912B, 389; 4 Elliott on Railroads, § 2097.

We are not concerned with any exception to the general rule as to the duty of the carrier to accept for transportation goods tendered for that purpose, such as when goods are tendered in unfit condition (A. C. L. R. R. Co. v. Rice, supra), for here no such exception is involved. There existed no reason for the rejection, save the fact that defendant either wanted it for its own use, or diverted it as it saw fit. In fact, the coal in the cars was accepted, but the shipment to plaintiff was declined. Therefore, upon the tender of this coal by the coal company for shipment to the plaintiff, under the proof offered by plaintiff, the coal company did all within its power to carry out its contract and make delivery to plaintiff. But defendant says it did not accept the shipment, did not sign and issue the bills of lading, and its declination so to do prevented the perfection of title to the coal in plaintiff.

[6] We are not so much concerned with the title and any right of action as between the plaintiff and the coal company but only with the fact as to whether as against the defendant plaintiff had a property right, general or special, in the coal with the right to immedi-

ate possession thereof. As previously shown, under plaintiff's proof, it was the duty of the defendant to issue the bills of lading as requested and tendered by the coal company. The argument of appellant's counsel would seem to concede that, had the agent issued the bills of lading, plaintiff's right would have been complete. But the court may in this action investigate the justice and equity of the case, and it is one of the maxims that equity treats as done that which ought to be done. It would be most inequitable to permit the defendant to thus deliberately decline to do its duty, plead such in defense of plaintiff's cause, and profit by its own wrong. Every principle of justice and equity would thus be violated. The bills of lading were made out by the coal company as shipper to this plaintiff as consignee, and thus tendered to defendant. The application of the principle of equitable estoppel stands in the way of defendant being heard to say that the bills were in fact not issued, for the reason it declined to do its duty in the premises. Though not directly in point, the following authorities are pertinent by way of analogy. 10 R. C. L. pp. 773, 774; Ill. Cent. Ry. Co. v. Seitz, 105 Am. St. Rep. 108; Ry. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693.

[7] There is no merit in the contention that intention to part with full dominion and control over the coal by the coal company was not shown, and that the tender thereof was but tentative. The undisputed proof shows every reasonable effort made by the coal company to perfect a transportation and delivery of this coal to the plaintiff. When the defendant declined to do so, the coal company could but acquiesce, for, as said by its agent, the coal "must move." The surrender of the coal under these circumstances to the defendant company for its own use or to be diverted to sources under direction of defendant was but the result of the wrongful conduct of defendant, and was under a form of compulsion, as being the best solution of a troublesome and embarrassing situation. We are of the opinion that, so far as this action is concerned, the right of property and right to immediate possession of the coal, under the evidence hereinabove referred to, was sufficiently perfected to maintain this suit upon the tender of the bills of lading to defendant's agent for issuance, and that defendant is estopped to deny any further perfection of title in plaintiff resulting from its refusal to perform its duty of issuing such bills of lading.

[8] Charges were asked seeking to eliminate from the jury's consideration the question of punitive damages. In Howton v. Mathias, supra, it was held that such damages may be recovered in an action of trover if the circumstances warranted, such as outrage in the taking, vexation or oppression in the detention, or when the injury has been

inflicted willfully and maliciously. From the evidence offered by the plaintiff it appears the taking of these cars of coal was willful and deliberate and continued over a volume of protests, and after repeated warnings as to the serious consequences to plaintiff's road. The practice continued in utter disregard of plaintiff's rights and the consequences to follow.

[9] It is insisted that in this connection it must be considered that defendant was but urging a priority of rights as to its own order for coal, but defendant had no such priority of right by contract or otherwise, and, as has been stated, there was evidence tending to show that it was receiving, not only its maximum quantity under its contract, but in excess thereof and to the entire exclusion of the plaintiff. But further discussion of this phase of the case is unnecessary as we are clearly convinced these charges were properly refused and that the question of assessment of punitive damages was one for the jury's consideration.

[10] There was much correspondence between plaintiff and defendant seeking a discontinuance of the practice and settlement of damages. Plaintiff made out at defendant's request bills showing the damages suffered— one of which showed the 15 cars actually confiscated after having been billed to plaintiff, and the other the damages suffered on other cars—the basis of this suit. As to the 15 cars defendant answered, admitting liability for the contract price, but as to the other denied liability altogether, and so wrote the plaintiff. Defendant made out and forwarded to plaintiff a voucher for the 15 cars, being the amount as named in plaintiff's bill therefor. This voucher showed it was for the value of the coal confiscated for the use of the company, and the words "per your bills in full" appear thereon. It is insisted the use of the plural "bills" is sufficient as a matter of law to show that the voucher was in full satisfaction of both bills, and that, therefore, as to the cars here complained of there has been an accord and satisfaction. The voucher shows the exact amount of the bill for the 15 cars admittedly taken, and shows the contract price of $2.93. The correspondence in connection with a consideration of the voucher and all the facts and circumstances refute the idea that this voucher was intended as in full accord and satisfaction of all damages claimed, for, as to further damages, defendant disclaimed any liability whatever, and made no effort to settle as to such damages. The court committed no error in leaving the question of accord and satisfaction to the jury. Ex parte Southern Cotton Oil Co., 93 So. 662;[1] Worthington v. Cleveland Lbr. Co., 17 Ala. App. 613, 88 So. 156, 158.

[1] 207 Ala. 704.

213 ALA.—8

The language of the court in the oral charge just preceding that portion to which exception was reserved (assignment of error 10) refers to the contract between plaintiff and the coal company, and the duty of the latter in reference to shipment of the coal, and, when considered in connection with the portion excepted, discloses there was no error committed. The insistence is that the question of intent on the part of the coal company is omitted, but the language of the entire charge, especially in view of the undisputed proof in this respect, clearly indicates that such tender is to be in good faith and with the intention of releasing all control over the coal so far as the coal company is concerned, to the end that plaintiff might acquire the same. The exception to this portion of the oral charge presents no reversible error.

[11] "Ordinarily, the measure of damages in an action of trover is the fair market value of the property, at and from the time of conversion to the time of the trial; but, if the evidence shows fluctuation in value after the conversion, the value may be fixed at the highest price between the conversion and the trial." Howton v. Mathias, supra.

[12] The measure of damages in refused charge 77 would appear to be less than that as fixed by the foregoing rule, and therefore the refusal of this charge worked no injury to defendant. Charges I and D, refused to defendant, were misleading, in that they refer to 12 cars of coal, wherein defendant admitted a confiscation of 15 cars, and error cannot be predicated upon this action of the court.

[13] We have previously shown that a conversion of the coal to defendant's own use was not essential, and this suffices to condemn refused charges A and F. So, also, we have expressed the view that plaintiff's right of action was complete upon rejection of the shipment tendered as indicated, and the fact that the coal company should subsequently have under compulsion of the situation billed the coal to some one else could not have the effect to destroy or affect plaintiff's right of action. Charges B, C, and J were properly refused.

Like consideration also serves as an answer to the question of evidence forming the basis of assignment of error 4.

[14] While generally the measure of damages for conversion is the market value of the property at the place of conversion, yet, where goods are converted by a carrier to a profitable market, where they would arrive in the usual course of things, another rule as to measure of damages has been adopted— that of the value at the point of destination less freight—and this rule is applied with particular force to a common carrier who converts goods committed to it for transpor-

tation. Zimmern v. Southern Ry. Co., 207 Ala. 169, 92 So. 437. There was no reversible error, therefore, in permitting the witness Coleman to state as to the market value of the coal at Bainbridge, Ga., the point of destination. This question is presented in assignments of error 8 and 9.

The fifth assignment of error relates to a matter of discretion of the trial court as to further cross-examination, and we find no abuse of this discretion. What has been said indicates our view that the affirmative charge was properly refused as to the whole case as well as the several counts.

[15] As to counts 23, 24, and 25, however, attention is directed to the fact that these counts seek recovery of the sum of $337, each for conversion of 40 tons of coal subsequent to that date. We are of the opinion, however, that these dates of September 26th, 27th and 28th, named in these several counts, being so named under videlicet, the affirmative charge was properly refused. Howton v. Mathias, supra.

We have considered the various assignments of error insisted upon by counsel for appellant, and find no reversible error. The judgment of the court below will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.

