206 So.2d 371

**RUSSELL–VAUGHN FORD, INC., et al.**

v.

**E. W. ROUSE.**

**6 Div. 379.**

Supreme Court of Alabama.

Jan. 11, 1968.

Rehearing Denied Feb. 8, 1968.

568

Martin, Balch, Bingham, Hawthorne &
Williams and Edw. S. Allen, Birmingham,
for appellants.

Rives, Peterson, Pettus & Conway, Frank O. Burge, Jr., and Duncan Manley, Birmingham, for appellee.

SIMPSON, Justice.

The plaintiff in this case filed suit against Russell-Vaughn Ford, Inc. and several individuals. All individual defendants were stricken by plaintiff before trial except the appellant James Parker, and one Virgil Harris who has not participated in this appeal.

The complaint was amended several times but ultimately issue was joined and the case went to the jury on a common count for conversion of plaintiff's 1960 Falcon automobile and a second count charging the defendants with conspiracy to convert the automobile.

Essentially the facts are as follows:

On April 24, 1962, the appellee went to the place of business of Russell-Vaughn Ford, Inc., to discuss trading his Falcon automobile in on a new Ford. He talked with one of the salesmen for a while who offered to trade a new Ford for the Falcon, plus $1,900. The trade was not consummated on this basis, but Mr. Rouse went to his house and picked up his wife and children and returned to the dealer. With his wife and children there Mr. Rouse discussed further the trade but no deal was made that night.

The following night he returned with a friend where further discussions on the trade were had. At the time of this visit one of the salesmen, Virgil Harris, asked Mr. Rouse for the keys to his Falcon. The keys were given to him and Mr. Rouse, his friend, and appellant Parker looked at the new cars for a time and then proceeded with the negotiations with regard to the trade. The testimony indicates that in this conversation the salesman offered to trade a new Ford for the Falcon, plus $2,400. The plaintiff declined to trade on this basis.

At this stage of the negotiations, Mr. Rouse asked for the return of the keys to the Falcon. The evidence is to the effect that both salesmen to whom Rouse had talked said that they did not know where

the keys were. Mr. Rouse then asked several people who appeared to be employees of Russell-Vaughn for the keys. He further asked several people in the building if they knew where his keys were. The testimony indicates that there were a number of people around who were aware of the fact that the appellee was seeking to have the keys to his car returned. Several mechanics and salesmen were, according to plaintiff's testimony, sitting around on cars looking at him and laughing at him.

After a period of time the plaintiff called the police department of the City of Birmingham. In response to his call Officer Montgomery came to the showroom of Russell-Vaughn Ford and was informed by the plaintiff that he was unable to get his keys back. Shortly after the arrival of the policeman, according to the policeman's testimony, the salesman Parker threw the keys to Mr. Rouse with the statement that he was a cry baby and that "they just wanted to see him cry a while".

The evidence is abundant to the effect that Mr. Rouse made a number of efforts to have his keys returned to him. He talked to the salesmen, to the manager, to mechanics, etc. and was met in many instances with laughter as if the entire matter was a "big joke".

As noted, the case was tried to a jury, and submitted on a conversion count in code form and on a second count charging conspiracy to convert. The jury returned a general verdict in favor of the plaintiff in the amount of $5,000. This appeal followed, after the trial court denied a motion for new trial.

■ The appellants have made several assignments of error. Initially it is argued that the facts of this case do not make out a case of conversion. It is argued that the conversion if at all, is a conversion of the keys to the automobile, not of the automobile itself. It is further contended that there was not under the case here presented a conversion at all. We are not persuaded that the law of Alabama supports this proposition. As noted in Long-Lewis Hardware Co. v. Abston, 235 Ala. 599, 180 So. 261,

> "It has been held by this court that 'the fact of conversion does not necessarily import an acquisition of property in the defendant.' Howton v. Mathias, 197 Ala. 457, 73 So. 92, 95. The conversion may consist, not only in an appropriation of the property to one's own use, but in its destruction, *or in exercising dominion over it in exclusion or defiance of plaintiff's right*. McGill v. Hollman, 208 Ala. 9, 93 So. 848, 31 A.L.R. 941, 948; Conner v. Allen, 33 Ala. 515; St. Louis & S. F. Ry. Co. v. Georgia, F. & A. Ry. Co., 213 Ala. 108, 104 So. 33." (Emphasis added.)

It is not contended that the plaintiff here had no right to demand the return of the keys to his automobile. Rather, the appellants seem to be arguing that there was no conversion which the law will recognize under the facts of this case because the defendants did not commit sufficient acts to amount to a conversion. We cannot agree. A remarkable admission in this regard was elicited by the plaintiff in examining one of the witnesses for the defense. It seems that according to salesman for Russell-Vaughn Ford, Inc. it is a rather usual practice in the automobile business to "lose keys" to cars belonging to potential customers. We see nothing in our cases which requires in a conversion case that the plaintiff prove that the defendant appropriated the property to his own use; rather, as noted in the cases referred to above, it is enough that he show that the defendant exercised dominion over it in exclusion or defiance of the right of the plaintiff. We think that has been done here. The jury so found and we cannot concur that a case for conversion has not been made on these facts.

■ Further, appellants argue that there was no conversion since the plaintiff could have called his wife at home, who

had another set of keys and thereby gained the ability to move his automobile. We find nothing in our cases which would require the plaintiff to exhaust all possible means of gaining possession of a chattel which is withheld from him by the defendant, after demanding its return. On the contrary, it is the refusal, without legal excuse, to deliver a chattel, which constitutes a conversion. Compton v. Sims, 209 Ala. 287, 96 So. 185.

We find unconvincing the appellants contention that if there were a conversion at all, it was the conversion of the automobile keys, and not of the automobile. In Compton v. Sims, supra, this court sustained a finding that there had been a conversion of cotton where the defendant refused to deliver to the plaintiff "warehouse tickets" which would have enabled him to gain possession of the cotton. The court spoke of the warehouse tickets as a symbol of the cotton and found that the retention of them amounted to a conversion of the cotton. So here, we think that the withholding from the plaintiff after demand of the keys to his automobile, without which he could not move it, amounted to a conversion of the automobile.

It is next argued by appellants that the amount of the verdict is excessive. It is not denied that punitive damages are recoverable here in the discretion of the jury. In Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358, this court held:

"If the conversion was committed in known violation of the law and of plaintiff's rights with circumstances of insult, or contumely, or malice, punitive damages were recoverable in the discretion of the jury."

We think that the evidence justifies the jury's conclusion that these circumstances existed in this case.

We have carefully considered each assignment of error made and argued by appellants. We are clear to the conclusion that the evidence supports the verdict of the jury and find no error in the court's refusal to grant a new trial. In our opinion no assignment justifies a reversal.

Affirmed.

MERRILL, COLEMAN, and HARWOOD, JJ., concur.