This is a conversion case.
The cause came for trial on 17 August 1982. After the evidence was in, Coffee County Bank's motion for a directed verdict was granted by the trial court. This appeal followed denial of Citizens Bank's motion for a new trial.
The issue for review is whether, when viewed in the light most favorable to Citizens Bank, evidence was sufficient to justify the submission of the case to a jury.
The record shows that on 15 February 1975, Citizens Bank of Enterprise, Alabama, extended a loan to G.S.F. Corporation and took a security interest in all equipment, parts, and supplies maintained in the debtor's business. G.S.F. was to open and operate a Burger King fast food restaurant. The Burger King restaurant operated for a short period of time, then closed and went into bankruptcy.
On 23 June 1978, the bankruptcy court ordered the real estate where the secured equipment was located released to T.J. Ray, the owner thereof. It ordered the equipment subject to Citizens Bank's security interest released to that bank.
By deed dated 23 June 1978, the Burger King property was conveyed by T.J. Ray to Kenneth Harris and wife, Margaret Harris. Mr. Harris was, at the time, President of *Page 1205 
Coffee County Bank. By deed dated 29 June 1978, Mr. and Mrs. Harris conveyed the property to Coffee County Bank.
Mr. Marvin Cotter, a Director of Coffee County Bank, testified that he made the bank aware the Burger King building was for sale. He testified that Harris was given authority by the Board of Directors to negotiate with T.J. Ray for the purchase of the Burger King building.
On 12, 14, 16 and 27 June 1978, letters were exchanged between Mr. Weatherford, attorney for Citizens Bank and Mr. Sawyer, who was the legal representative for both Coffee County Bank and Mr. and Mrs. Harris. These letters are set forth below:
"Enterprise, Alabama
"June 12, 1978
 "ROWE, ROWE, SAWYER Joe Sawyer 119 E. College Ave. Enterprise, AL 36330
"RE: Burger King Equipment
"Dear Joe:
 "This will confirm our conversation of today concerning the equipment in the Burger King building. You informed me that you represent Mr. Harris who has purchased the Burger King building from Mr. Ray. You also informed me that the Bankruptcy Court no longer has jurisdiction of the building and equipment.
 "You are also aware that the Citizens Bank has a financing statement properly recorded giving them a security interest in all the equipment inside the building. As attorney for Citizens Bank, the secured party, I hereby request that the property listed in our security agreement be released to us.
"Sincerely
 "James H. Weatherford, Jr. Attorney at Law"
"Enterprise, Alabama
 "June 14, 1978 "Hon. James H. Weatherford Lindsey Weatherford P.O. Box 1291 Enterprise, Alabama 36330
"Re: Burger King Equipment
"Dear Jim:
 "It is our contention that the captioned equipment are fixtures and if you wish to take them, you can pay for the damage that it will do to the Building. Our opinion is that these fixtures are part of the Building and part of our Purchase Price.
"We are
"Very truly yours,
"ROWE, ROWE SAWYER
"By: J.E. Sawyer, Jr."
"Enterprise, Alabama
June 16, 1978
 "ROWE, ROWE SAWYER 1129 E. College Ave. Enterprise, AL 36330
"RE: Burger King Equipment
"Dear Joe:
 "If you would have Mr. Harris sign a letter giving the Citizens Bank the right to enter the Burger King Building to remove their collateral, we should be able to conclude this matter within a few days.
"Sincerely,
 "James H. Weatherford, Jr. Attorney at Law"
"Enterprise, Alabama
"June 27, 1978
 "ROWE, ROWE SAWYER Joe Sawyer 119 E. College Ave. Enterprise, AL 36330
"RE: Burger King Equipment
"Dear Joe:
 "Enclosed is a copy of Judge Steele's order whereby the bankruptcy court abandon[ed] any interest in the property subject to the Citizens Bank security interest.
 "I have not heard from you concerning my letter of June 16, 1978, concerning Mr. Harris giving the Citizens Bank the right to enter the Burger King building to remove their collateral. I again request *Page 1206 
that Mr. Harris give us permission to enter the building to remove our collateral. I am looking forward to hearing from you.
"Sincerely
 "James H. Weatherford, Jr. Attorney at Law".
Harris, the owner of the real estate at the time of the correspondence, testified he knew nothing of the exchange of letters between Weatherford and Sawyer prior to the date suit was filed by Citizens Bank.
Sawyer testified that he represented both Coffee County Bank and Mr. Harris and the letter of 14 June 1978 was his reply after having consulted Mr. Eason, Chief Executive Officer of that bank.
Mr. Armstrong, President of Citizens Bank, testified regarding a conversation with Eason in September of 1978, at a banker's meeting in Gulf Shores. The substance of his testimony was that Eason told him that Coffee County Bank was claiming no interest in the equipment. Armstrong testified further that Eason agreed to talk with the bank's president, Harris, and "get back with" him. He further testified that Eason left Coffee County Bank in May of 1979 without having contacted him about the equipment.
Armstrong also testified about a casual conversation in May or early June of 1979, between himself and Mr. Austin Landers, Coffee County Bank's new Executive Vice President. He testified that Landers told him he, Landers, would discuss the matter of the controversy over equipment with Harris and "get back with" him regarding the matter.
Coffee County Bank leased their building to Mr. Reeves during July of 1979. Reeves testified he was notified about a dispute regarding the equipment located in the building but that Harris told him he could use the equipment. He further stated he understood that any equipment he did not care to use was to be stored by Coffee County Bank.
Mr. Cotter, a member of the Board of Directors of Coffee County Bank, testified the Board discussed the conflict over the equipment prior to leasing the building to Reeves and determined the lease should not include the equipment.
Evidence was presented that Attorney Warren Rowe contacted Austin Landers on behalf of Citizens Bank regarding resolution of the dispute over the equipment. This was just prior to the date a lease was entered into by Coffee County Bank with Reeves.
Citizens Bank filed suit against Coffee County Bank on 14 September 1979. Their complaint charged Coffee County Bank with conversion of the secured equipment used in the conduct of the Burger King business.
In determining the evidence insufficient as a matter of law to warrant submission to the jury the trial court outlined its rationale as follows:
 "The gist of this civil action of trover is a conversion of personal property in specie, existing chattel. Recovery is sought for damages for the fair market value of the chattel at the time of conversion. Title to the property passes to the alleged converter upon satisfaction of any judgment that may be obtained. There are four classes of conversion. Yesterday at the conclusion of plaintiff's case Mr. Weatherford said we do not insist that there was a wrongful acquisition or taking of property. Therefore the only other three classes of a conversion could be an illegal assumption of ownership, illegal use or wrongful detention. The illegal assumption of ownership or the illegal use does not require there be a demand or a refusal, because the acts or conduct, if there is any illegal assumption of ownership or use speak for theirselves. But, if the original possession of the defendant was rightful there can be no recovery for trover unless there has been a demand made and a refusal to deliver.
 "Now, let's assume that there — one more thing. There has got to be two things. You have got to have a right to the property and the immediate right of possession in the plaintiff concurring both *Page 1207 
in time and place, and the wrongful assumption of ownership or demand and refusal.
 "Assuming that there was a right to property because of the default of the debtor and all the financing papers were properly filed and the security interest was protected do we have or does there exist the immediate right of possession in the plaintiff when Section 7-9-313 requires when the priority holder is entitled to repossess his property on default of the debtor must do either two things, either repair the premises after removal or in the alternative give adequate security for performance of that obligation." (Emphasis added.)
We find the above statement of the law and its application to these facts incorrect in part. In Southeastern MachineryCompany, Inc. v. Tarpley, 398 So.2d 700 (Ala.Civ.App. 1981),cert. denied, 398 So.2d 703 (Ala. 1981), our Court of Civil Appeals had occasion to correctly set forth the law in Alabama relative to the necessity of proof of demand and refusal in a conversion action. That court stated:
 "In order for there to be a conversion it must appear that a wrongful taking, detention or an illegal assumption of ownership or use of another's property has taken place. Ott v. Fox, 362 So.2d 836
(Ala. 1978). Where the original taker acquires possession of the property rightfully and has neither asserted legal title to it nor exercised dominion over it inconsistent with the rights of the owner, ordinarily a demand and refusal to deliver the property are necessary. Shriner v. Meyer, 171 Ala. 112, 55 So. 156 (1911); Russell-Vaughn Ford, Inc. v. Rouse, 281 Ala. 567, 206 So.2d 371 (1968). [Emphasis added.]
 "Southeastern claimed legal title and no wrongful taking and that no demand was made for the return of the tractor.
 "There was abundant evidence presented by each side in support of legal title. The jury could properly find legal title in Tarpley from that evidence. Bazzel v. Reeves, 374 So.2d 902 (Ala.Civ.App. 1979).
 "A demand and refusal is but one means of proving a conversion. A demand is not necessary when there has been a wrongful taking or an exercise of dominion and control over the property inconsistent with the rights of the owner. Moore v. Stephens, 31 Ala. App. 446, 18 So.2d 577 (1944); 89 C.J.S. Trover and Conversion § 55 (1955). Assuming there was no wrongful taking (the tractor being in Southeastern's possession for repair or return), the conversion could have arisen by the exercise of dominion over the tractor by Southeastern in exclusion or defiance of Tarpley's right to possession. Carolina Casualty Insurance Co. v. Tisdale, 46 Ala. App. 50, 237 So.2d 855; cert. denied, 286 Ala. 741, 237 So.2d 861
(1970). In that event no demand would be necessary."
398 So.2d at 702.
When considered in light of the above correct statement of the law, Citizens Bank presented material evidence in support of their theory of conversion on the part of Coffee County Bank by improper exercise of dominion over the secured property.
Further, Citizens Bank is not foreclosed from recovery by Section 7-9-313 (5), Code 1975, as the trial court held. That statute provides:
 "(5) When under subsections (2) or (3) and (4) a secured party has priority over the claims of all persons who have interests in the real estate, he may, on default, subject to the provisions of part 5, remove his collateral from the real estate but he must reimburse any encumbrancer or owner of the real estate who is not the debtor and who has not otherwise agreed for the cost of repair of any physical injury, but not for any diminution in value of the real estate caused by the absence of the goods removed or by any necessity for replacing them. A person entitled to reimbursement may refuse permission to remove until the secured party gives adequate security for the performance of this obligation."
There is no evidence in the record of a direct refusal by Coffee County Bank to *Page 1208 
allow removal of the secured equipment from the Burger King building premised on Citizens Bank's failure to provide security prior to removal. On the other hand, Citizens Bank contends its letter of 16 June 1978 is evidence of its willingness to provide reimbursement for damages.
It is well established that "it is only where the facts are such that all reasonable men must draw the same conclusion from them that the question . . . is ever considered as one of law for the court. Unless the evidence is free from doubt or adverse inference, the question is for the jury." Alabama PowerCo. v. Guy, 281 Ala. 583, 206 So.2d 594 (1968).
We are satisfied the evidence offered by Citizens Bank in support of its allegations against Coffee County Bank was sufficient to survive a motion for directed verdict. Therefore, Coffee County Bank was not entitled to a directed verdict as a matter of law. The judgment below is due to be and is hereby reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.