George H. OWENS, Sr., doing business as American Contractors, Plaintiff-Appellee-Cross Appellant,

v.

CLOW CORPORATION et al., Defendants-Appellants-Cross Appellees.

No. 73-2377.

United States Court of Appeals, Fifth Circuit.

March 15, 1974.

Allen Poppleton, William M. Warren, Jr., Birmingham, Ala., for defendants-appellants.

Harry Cole, Montgomery, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff Owens and others bid on the job of installing a plastic pipe water system for a small Alabama community. Several bidders including Owens received from defendant Clow written proposals to supply for the job the 143,500 feet of 6″ pipe and 103,000 feet of 3″ pipe that appeared to be required. Owens was low bidder and orally ordered from Clow for the job pipe of these two sizes. Clow sent Owens an invoice setting out the above quantities, and the prices, for the two sizes of pipe. Neither the proposal nor the invoice prescribed times for delivery. According to the testimony of Owens, in the telephone conversation in which he ordered the pipe it was agreed that Clow would deliver a truck load of pipe a day.

Clow satisfactorily delivered the 3″ pipe as agreed but fell behind in delivering the 6″ pipe in the manner described by Owens as having been orally agreed upon. Owens fell behind on the job and suffered delay-associated damages. Ultimately he terminated his arrangement with Clow and obtained pipe elsewhere at a higher price. Additionally, during the course of the job change orders were issued requiring Owens to lay more pipe of both sizes than the amounts specifically listed in Clow's proposal.

Owens sued Clow and in a jury trial the jury found the issues in favor of Owens.[1]

▆▆▆ The major point on appeal arises from Clow's insistence that under the Uniform Commercial Code as adopted in Alabama, Tit. 7A, Code of Alabama (Recompiled), the written documents—the proposal and Clow's confirming invoice—created a contract enforceable only to the extent it had been performed by the parties, because the documents did not cover terms of delivery and delivery could not be the subject of a supplementary oral agreement. Tit. 7A, § 2–201(1) provides:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party

---

[1.] In his complaint Owens acknowledged owing Clow a balance of $50,992.06 for pipe delivered prior to the termination. Clow counterclaimed for this amount. The jury verdict on the counterclaim was for Owens. The court entered judgment n/o/v on the counterclaim, from which Owens cross-appealed. This was a protective cross-appeal, and Owens does not claim, if the judgment in his favor on his claim is affirmed, that the judgment on the counterclaim should be reversed. Therefore, we need not decide the question of whether the cross-appeal was timely filed.

against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

The Official Comment to § 2–201 says:

The changed phraseology of this section is intended to make it clear that:

1. The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. It may be written in lead pencil on a scratch pad. It need not indicate which party is the buyer and which the seller. The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted.

\* \* \* \* \* \*

Only three definite and invariable requirements as to the memorandum are made by this subsection. First, it must evidence a contract for the sale of goods; second, it must be "signed", a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.

It is implicit in Tit. 7A, § 2–309 that agreement concerning time of delivery is not a condition precedent to the existence of an enforceable contract. That section provides in pertinent part:

(1) The time for shipment or delivery or any other action under a contract if

not provided in this article or agreed upon shall be a reasonable time.

The Official Comment states:

1. Subsection (1) requires that all actions taken under a sales contract must be taken within a reasonable time where no time has been agreed upon.

\* \* \* \* \* \*

4. When the time for delivery is left open, unreasonably early offers of or demands for delivery are intended to be read under this Article as expressions of desire or intention, requesting the assent or acquiescence of the other party, not as final positions which may amount without more to breach or to create breach by the other side.

Clow relies upon Artman v. International Harvester Co., 355 F.Supp. 482 (W.D.Pa.1973), which held that purchase order documents were insufficient to establish a written contract enforceable under the Pennsylvania equivalent of Alabama's § 2–201. But the contract sought to be established concerned the alleged granting of an automotive truck sales franchise. The opinion distinguished this "complex on-going franchise relationship" from the simple sale of goods, which is the type of transaction involved in the present case.

Thus, Clow's motion for directed verdict based on the nonenforceability of the contract was properly denied.

■ Clow makes an alternative argument, based on the last sentence of § 2–201(1), that if there was an agreement it was enforceable to only the extent of the quantities shown in Clow's proposal and not for damages suffered by Owens from purchasing additional quantities of pipe required by change orders. This point was not raised by the motion for directed verdict or by objections to the jury instructions.[2]

---

2. Even if the point had been preserved by motion there was evidence, and jury instructions not objected to, permitting the jury to return a verdict including damages aris-

ing from Owens' purchase elsewhere of the change order pipe, on the basis that Clow's proposal, accepted by Owens, was to supply all pipe necessary to complete the job. See

Clow's proposal contained an exculpatory clause.[3] But there was adequate evidence that the delays were not "beyond Clow's reasonable control." Indeed there was evidence that Clow did not have in its inventory enough 6" pipe to fill its orders, could not manufacture any more because of difficulty in producing pipe of that size free of defects, yet continued to accept orders for that size pipe while giving no notice to Owens and others of its inadequate supply.

When Clow failed to deliver 6" pipe as agreed, Owens terminated his dealings with Clow and purchased elsewhere and at higher prices all pipe required for the job. Clow theorizes that though Owens was free to buy elsewhere what he could not get in sufficient quantity from Clow, he was, as a matter of mitigation of damages, required to take from Clow at its lower price such 6" pipe as Clow could deliver. Clow's motion for directed verdict raised the issue that Owens had failed to mitigate his damages in a reasonable manner. Whether it was reasonable for Owens to purchase elsewhere after his abortive arrangement with Clow had already caused him damaging delays was a classic jury issue. The court charged without objection:

I charge you that if you are reasonably satisfied from the evidence that defendant, Clow, entered into a contract or an agreement with Owens to furnish materials for the job in question and that Clow failed to furnish the materials as agreed or within a reasonable time, then Owens would be entitled to cancel the contract with Clow and purchase other materials from another supplier and set off the difference in cost against any amount which Owens owed Clow, provided such · purchase or purchases was or were reasonably necessary and were made in good faith without any unreasonable delay.

The judgment of the District Court is affirmed.

---

also § 2–306(1): "A term which measures the quantity by . . . the requirements of the buyer means such actual . . . requirements as may occur in good faith."

3. "Clow shall not be liable for delay or default in delivery for any cause beyond Clow's reasonable control including, but not limited to, government action, shortage of labor, raw materials, production or transportation facilities, labor difficulty, fire, flood or accident."