Defendant-Appellant, James Ott, brings this appeal from a jury verdict and judgment for conversion and wrongful repossession of property. We affirm.
It is undisputed that on October 18, 1973, Mrs. Phyllis J. Fox, Appellee, and Phyllis Schidler purchased from Ott all the stock of the Flamingo Club of Dothan, Inc. The sale embraced all assets of the business, including furniture, equipment, good will, a "very favorable" lease on the business property, and an option to purchase the realty. The security agreement signed by the parties called for a $20,000 down-payment, $15,000 payable within ninety days, and the $65,000 balance payable in monthly installments of $700, due the first of each month. Simultaneously, and attached as a part of the security agreement, Ott leased the premises to Fox and Schidler, and the corporation, for a monthly rental of $1500.
Fox's husband, Galen, negotiated the lease and purchase mentioned above, and acted as manager of the Club. Fox purchased Schidler's interests in January, 1974.
Dispute arises concerning the December, 1975, monthly payments. On December 3, Ott was given the $700 payment on the security agreement. Mr. Fox told him, however, that he would need "a week or so" before he could pay the rent. Pursuant to the terms of the lease, Fox received a notice to vacate on either the 4th, 5th, or 9th. On Sunday, December 14 (the fifth day after the notice, as required by the lease), Mr. Fox gave Ott a check for $1500. At that time, Ott allegedly agreed not to present the check at the bank until the following afternoon so that Fox could deposit the Club's weekend receipts.
The next morning, at 9:10 a.m., Ott presented the check to the City National Bank of Dothan and was told Fox did not have sufficient funds to cover the stated amount. Mr. Fox deposited his receipts approximately an hour and one half later at a nearby branch office of the Bank. The deposit rendered his account sufficient to cover the draft. Fox heard nothing from Ott until the next morning when he learned Ott had changed the locks on the Club.
Pursuant to the agreement's repossession clause, Mrs. Fox delivered-over her stock to Ott so that he could maintain the establishment's alcoholic beverage license. Without notifying the Foxes, Ott later sold the business assets to one party and the premises to another.
As refined by the Court's Pretrial Order, Fox founded her complaint upon three "Counts." First, she alleged Ott converted all her stock in the Club, and all furniture, fixtures and equipment of the corporation. Secondly, she alleged Ott wrongfully repossessed the stock, furniture, fixtures and equipment of the corporation. Her third "Count" averred a negligent or wrongful failure by the Bank to pay her check or draft. (A directed verdict was granted as to this third "Count" and no issues concerning this Party are raised on appeal.) "Counts I and II" were submitted to the jury and a verdict was returned for Plaintiff assessing damages at $88,989.
On appeal, Ott's primary contention is that he should have been granted a directed verdict either at the end of Plaintiff's case or after all the evidence had been presented. In support of this contention, he argues three points: (1) That the repossession was lawful and that, therefore, no conversion was possible; (2) That there was no evidence that Mrs. Fox personally owned the allegedly converted property; and (3) That there is no evidence that he converted Fox's shares of stock. These contentions, however, are without merit.
In his Motion for Directed Verdict, entered following the close of Plaintiff's case, Ott merely contended his repossession was lawful. By the second Motion, submitted at the close of all the evidence, Ott asserted that there was a lack of evidence concerning conversion of the stock. Neither Motion questioned ownership of the allegedly converted personalty. Thus, point "(2)" mentioned above must be considered waived. Rule 50 (a), ARCP. Accord, Owens v. Clow Corp., 491 F.2d 101 (5th Cir. 1974); and Crum v. McGhee, 289 Ala. 244, *Page 839 266 So.2d 855 (1972). As will be shown, because there was evidence of conversion and wrongful repossession of the furniture, fixtures and equipment of the corporation, and because "Count I" included both conversion of the stock and the furniture, fixtures and equipment, the trial Court properly denied the Motion concerning point "(3)" above.
Point "(1)" mentioned above pertains to the legality of the repossession and, in effect, the conversion of the furniture, fixtures and equipment of the Club. Thus, the sufficiency of the evidence in support of Plaintiff's claim, together with the propriety of the Court's ruling that such issues should be submitted to the jury, must now be considered.
Where a directed verdict is requested, the entire evidence must be viewed in a light most favorable to the opposing party.Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972); andCarolina Casualty Insurance Co. v. Tisdale, 46 Ala. App. 50,237 So.2d 855 (1970). In a tort claim context, a motion for directed verdict should be denied where the evidence is in conflict as to any material issue or where, from the evidence, reasonable inferences must be drawn to substantiate the claimed culpability of the defendant. Birmingham Electric Co. v. McQueen, 253 Ala. 395, 44 So.2d 598 (1950); and Wells v. Central Bank of Alabama,N.A., 347 So.2d 114 (Ala.Civ.App. 1977). Therefore, the trial Court properly denied Ott's Motion if Fox presented credible evidence supporting her contentions.
To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse. Webb v. Dickson, 276 Ala. 553, 165 So.2d 103 (1964); and State Farm Mutual AutomobileInsurance Co. v. Wagnon, 53 Ala. App. 712, 304 So.2d 216 (1974). The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession. Jones v. Americar, Inc.,283 Ala. 638, 219 So.2d 893 (1969). Russell-Vaughn Ford, Inc. v.Rouse, 281 Ala. 567, 206 So.2d 371 (1968); and State Farm, supra. And a wrongful repossession of personalty will support such a claim. See Ford Motor Credit Co. v. Jackson, 347 So.2d 992
(Ala.Civ.App. 1977); and Wells, supra.
In the instant case, it is undisputed that Ott, after Fox's check "bounced," changed the locks on the Club and repossessed all its furniture, fixtures and equipment. He contends this was in compliance with the terms of the lease and security agreement, was lawful, and, thus, no conversion occurred.
It is well settled that, ordinarily, an agreement to extend the time of payment of a presently-due obligation or debt must itself be based upon valuable consideration. Webb, supra; Ison FinanceCo. v. Glasgow, 266 Ala. 391, 96 So.2d 737 (1957); and 10 C.J.S.Bills and Notes § 160. It has also been held, however, that a creditor, by his actions, may be estopped from asserting this defense where, as here, there is credible evidence of the elements of this legal principle. Bank of Huntsville v. Witcher,336 So.2d 1384 (Ala.Civ.App. 1976); and Commercial Credit Co. v.Willis, 126 Fla. 444, 171 So. 304 (1936).
 "Estoppel has been defined by one court, in dealing with a case similar to the one before us, as: (1) knowledge of the facts by the party to be estopped; (2) intention by the party to be estopped that its conduct be acted upon, or such party acts so that the party asserting estoppel has a right to believe that the conduct is so intended; (3) ignorance by the party asserting estoppel of the true facts; and (4) injurious reliance by the party asserting estoppel on the conduct. Varela v. Wells Fargo Bank, 15 Cal.App.3d 741, 93 Cal.Rptr. 428 (1971). This definition is in accord with the Alabama cases. See, e.g., Mooradian v. Canal Insurance Co., 272 Ala. 373, 378, 130 So.2d 915 (1961); Ellison v. Butler 271 Ala. 399, 124 So.2d 88 (1960)." Bank of Huntsville, at 1387.
As stated, there was evidence presented that Ott agreed to wait until the afternoon of December 15 before presenting *Page 840 
the check given him the day before. Virtually every rental payment had been late under the terms of the lease and security agreement. (Of the twenty lease payments received into evidence, fourteen were dated later than the first day of the month.) A jury question was presented as to whether Ott made this agreement, whether Fox was justified in believing it, and whether Ott intentionally violated the agreement to Fox's detriment. Therefore, the Motion for Directed Verdict was properly denied and the issue was properly submitted to the jury.
Similarly, Ott's next contention — relevancy of prior lease payments and the value of the allegedly converted stock — lacks merit. Obviously the cancelled checks, noted parenthetically above, were relevant as to the course of dealings between the parties, as well as the Foxes' justification in relying upon Ott's agreement not to present their check for payment until the afternoon of December 15. The value of the lease, clearly a corporate asset, aids in determination of the value of the allegedly converted corporate stock because the value of such stock is a reflection of corporate worth. Furthermore, the trial Judge has great discretion concerning the relevancy of evidence.Alabama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975). Moreover, relevancy was not assigned as a ground for this particular objection below. Alabama Power Co. v. Tatum, supra; and Rule 46, ARCP.
Ott's next argument questions the sufficiency of the evidence supporting an award of punitive damages and the trial Court's oral charge on this subject. It is clear that punitive damages may be awarded in an action of conversion, even though not alleged in the complaint, where the evidence justifies such an award. Carolina Casualty, supra. Here, there was evidence of insult and malice in that Ott knowingly violated his extension agreement and speedily repossessed the premises without notifying Fox of his actions, even though Mr. Fox offered him a cash payment at that time. Such evidence is sufficient in this regard. See Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961); and Roanv. McCaleb, 264 Ala. 31, 84 So.2d 358 (1955).
Also, Ott failed to object to the Court's oral charge. For this reason, he cannot now complain of possible errors contained therein. Windsor v. General Motors Acceptance Corp., 295 Ala. 80,323 So.2d 350 (1975); and Tombrello v. McGhee, 282 Ala. 408,211 So.2d 900 (1968).
Ott further argues that counsel for Fox improperly commented in closing argument upon facts not in evidence. Great latitude is permitted in arguments by counsel, and the trial Judge has much discretion in his rulings on such matters. See New York Times Co.v. Sullivan, 273 Ala. 656, 144 So.2d 25 (1962), rev'd. on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); andAlabama Great Southern Railroad Co. v. Gambrell, 262 Ala. 290,78 So.2d 619 (1955). Ott's allegations take statements out of context which, when read as a whole, constitute harmless error, if error at all. See Rule 45, ARAP; and Rule 61, ARCP.
Next, Ott argues that the deposition of Galen Fox, read into evidence, was improperly excluded from the jury room during deliberations. In support of this argument, he cites § 12-16-14, Code 1975, which reads:
 All instruments of evidence and depositions read to the jury may be taken out by them on their retirement.
This rule, by its own terms, is discretionary (Alabama City G. A. Railway Co. v. Heald, 178 Ala. 636, 59 So. 461 (1912); but, as is reflected by the Code Commissioner's Comments, it is superseded in civil cases by Rule 51, ARCP. That Rule entirely omits reference as to depositions going to the jury for their deliberation. The Rule thereby prevents such reception. The undue influence and inordinate weight such evidence may be given clearly justifies our holding. To permit the jury to take the deposition into the jury room would give that evidence more weight than ordinary testimony given during the trial. Under present practice, *Page 841 
the deposition, which has been read into evidence, is not itself evidence. Therefore, a mere reading of the deposition, or of offered pertinent portions, into the record accords a more desirable result.
It is understood, of course, that nothing we have said in any way affects the admissibility, or the taking into the jury room, of documentary evidence (e.g., notes, insurance policies, written contracts, plats, etc.); rather, our holding is limited to the matter at issue — testimony by way of deposition — the transcription of which is not itself evidence.
Appellant raises one final point upon appeal. He contends evidence admitted as to the value of the stock and personalty at the time they were sold to third parties is irrelevant. This contention is erroneous for two reasons. First, such evidence goes toward proof of conversion under § 7-9-504, Code 1975, because no notice of these subsequent sales was given Fox. Ott asserts he utilized § 7-9-504 (4), however, and that notice was not required. Even assuming this contention is well founded, the evidence was relevant upon the issue of damages.
The measure of damages for conversion is the difference between the reasonable fair market value of the item converted and the balance due on the mortgage debt at the time of conversion, plus interest. Ford Motor Credit Co. v. Jackson, 347 So.2d 992
(Ala.Civ.App. 1977). The determination of this fair market value, particularly with property that fluctuates in value, however, must be its value at the date of conversion, or at any timesubsequent thereto and before trial. Mattingly v. Houston,167 Ala. 167, 52 So. 78 (1909); and Coffee General Hospital v.Henderson, 338 So.2d 1022 (Ala.Civ.App. 1976). Accord, MerrillLynch, Pierce, Fenner Smith, Inc. v. Clayton, 488 F.2d 974 (5th Cir. 1976); and Chattanooga Discount Corp. v. West, 219 F. Supp. 140
(N.D.Ala. 1963). Mindful of this rule, the trial Judge clearly did not abuse his discretion by permitting introduction of the controverted testimony.
After reviewing all assignments, we find no error in the proceedings below. The judgment of the trial Court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX and SHORES, JJ., concur.
BEATTY, J., concurs in that aspect of the opinion relating to Rule 51, ARCP. Otherwise, he concurs in the result only.