[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 307 
Farmers and Merchants Bank of Centre (sometimes hereinafter "the Bank") filed suit against L.W. Hancock and Centre Chain Saw Company ("Centre") for a deficiency judgment of $82,582.76, including interest and attorney fees. Centre and Hancock counterclaimed, answered and alleged that there was an accord and satisfaction, and alleging deceit, misrepresentation, bad faith repossession, commercially unreasonable sale, and conspiracy.
Centre Chain Saw borrowed money from Farmers and Merchants Bank to buy two large trucks. Hancock, as the principal owner of Centre, signed as guarantor. The duration of the two notes, which were issued in 1979, was to be 180 days. Both notes were rolled over repeatedly; each time Hancock paid the accrued interest and renewed at the current market rate.
In 1982, Farmers and Merchants Bank, after an FDIC audit and the ousting of the loan officer who generally handled Hancock's accounts, decided to foreclose. Neither of the notes had matured. A vice president of the Bank, J.W. Hampton, requested that Hancock turn the trucks over to the Bank. Hancock delivered the trucks to the Bank. Hampton, then requested that Hancock sign foreclosure releases which allowed the Bank to sell the trucks without a formal foreclosure proceeding. It was Hancock's understanding that by signing the releases and voluntarily relinquishing possession of the trucks, the Bank would relieve him of any further responsibilities on the notes.
One of the trucks was sold at a public auction to Travis James, a member of the loan committee and board of directors of Farmers and Merchants Bank, for $10,000. No one was present at the sale but James and the Bank's attorney. There was evidence presented that this truck had a value of $33,000. The second truck was later sold to L and M Sand and Gravel for $20,000. There was evidence that this second truck had a value of between $46,500 and $47,000.
The trial court charged the jury on three issues:
(1) Did Centre and Hancock owe the Bank a deficiency following the foreclosure sale, or was there an affirmative defense of accord and satisfaction?
(2) Did the Bank act in good faith in concluding that the prospect of payment of this debt had become impaired? (The court instructed the jury that punitive damages were available if it found that the repossession was wrongful, and attended by circumstances of "insult, malice, or oppression," or was "intentionally committed knowing that the act was wrongful.")
(3) Did Farmers and Merchants Bank act in a commercially unreasonable manner in the sale of the two trucks?
At the conclusion of the Bank's evidence, Hancock and Centre filed a motion for directed verdict on the ground that there was an accord and satisfaction, which was denied. At the close of Centre's and Hancock's case, the Bank filed a motion for directed verdict, which was granted in part, and denied in part. The court granted the Bank a directed verdict as to all claims set forth in the counterclaim except the claim of wrongful repossession and the claim of sale and disposition of the collateral in a commercially unreasonable manner. The jury returned a verdict against the Bank and in favor of Hancock and Centre:
 "We, the jury, find the issues in favor of the defendants on the counterclaim and against the plaintiff and assess actual damages in the sum of $98,000 and punitive damages in the sum of $30,000 and additionally assess damages for mental anguish against the plaintiff in favor of L.W. Hancock in the additional sum of $20,000."
Farmers and Merchants Bank filed a motion for judgment notwithstanding the verdict (J.N.O.V.), and, alternatively, motions for a remittitur and for a new trial. All of its motions were denied, and this appeal followed. *Page 309 
Farmers and Merchants Bank raises thirteen issues on appeal. We have consolidated those issues into five.
 I
We will address first the issue of whether Hancock's and Centre's claims of accord and satisfaction was sufficient to deny Farmers and Merchants Bank's motion for directed verdict on its claim for a deficiency judgment. Farmers and Merchants Bank contends that Centre and Hancock failed, as a matter of law, to prove the requisite requirements for an accord and satisfaction. The Bank argues that the meeting of the minds necessary for an accord and satisfaction did not exist.
The defense of accord and satisfaction was based on a conversation that occurred between the Bank's vice president, J.W. Hampton, and Mr. Hancock. The conversation occurred prior to the Bank's securing Mr. Hancock's signature on foreclosure releases that allowed the Bank to sell the trucks without a formal foreclosure proceeding.
Mr. Hancock testified on direct examination concerning the execution of the foreclosure release as follows:
 "Mr. Thompson: What was your conversation with Mr. Hampton about signing these documents?
 "Mr. Hancock: He said, 'Would you sign a release on these trucks so I can go ahead and sell them so I won't have to sue you and go through that court proceeding?' I said, 'Yeah,' and he wrote out the papers and sent them down there and I signed them.
 "Q. Okay. What did you understand him to say when he said that?
 "A. Just what he said. He said, 'Will you sign these papers, a release on these trucks, so I can sell them and I won't have to go to court and sue you and go through all that bunch of junk.' I took it at just what he said.
"Q. Did they sue you?
"A. Yeah. $82,000 I think it was.
 "Q. When you signed those documents did you believe him when he said he wasn't going to sue you?
"A. Well —
 "Q. Mr. Hancock, listen to what I'm saying. When you signed those documents did you hear Mr. Hampton say that he wouldn't sue you?
"A. Yeah. He said, 'So I won't have to sue you.'
 "Q. Did you understand that he wasn't going to sue you if you signed the documents?
"A. That's what he said.
"Q. And then did you sign the documents?
"A. Yes." (Emphasis supplied.)
On cross-examination, Mr. Hancock testified:
 "Mr. Riley: Do you remember telling him [John R. Chiles, counsel for the Bank at the January 13, 1984, deposition of Mr. Hancock] that J.W. did not tell you that you would not owe any more money?
 "Mr. Hancock: No. He didn't say it in those words. He said, 'Would you sign them so I can go ahead and sell them, so I won't have to sue you and carry you to court.'
 "Q. Yes sir, but my question to you is do you remember testifying earlier to Mr. Chiles' examination that Mr. Hampton did not tell you that if you turned the trucks in you wouldn't owe any more money on the notes?
"A. No, he didn't say that.
 "Mr. Chiles: Okay. So, you knew that from what J.W. told you, that by signing these, he would not have to go to court to be empowered to sell your trucks?
"Mr. Hancock: Right.
"Q. And apply the collateral to the loan?
"A. Right. Right.
 "Q. But he did not tell you, did he, that you would not owe the bank any money after the trucks were sold?
"A. No, sir." (Emphasis supplied.)
Mr. Hampton's recollection of the conversation is as follows:
 "Mr. Thompson: What was your discussion with Mr. Hancock relative to these releases when you carried them to him *Page 310 
after he had delivered the trucks up there?
 "Mr. Hampton: Not really any discussion. I told him what I had. He said he might want to let his lawyer look at it, let his lawyer read it. I told him, 'Feel free to do so.' He was perfectly welcome to do so, and I don't remember if he signed them that day or at a later date.
"Q. Anything else discussed?
"A. No, sir.
"Q. Did he ask what they were?
"A. Yes, sir.
"Q. What did you tell him?
 "A. I told him it was a release authorizing and directing the Bank to foreclose the trucks.
"Q. That's all you said?
"A. Yes, sir.
 "Q. Did you give him any other explanation about what those documents portrayed?
"A. No, sir.
"* * *
 "Mr. Riley. Now, when you carried these down to Centre Chain Saw Company and got Mr. Hancock to execute them as president, did you at that time tell Mr. Hancock that the bank would not sue him for any deficiency balance on those notes?
"Mr. Hampton: No, sir.
 "Q. You didn't make any representation to him about that at all?
"A. No, sir.
"Q. Did he ask you?
"A. No, sir.
"Q. And you didn't volunteer the information.
"A. No, sir.
 "Q. You didn't promise him that the Bank wouldn't sue him?
"A. Didn't promise him anything."
The elements of accord and satisfaction are set forth inRay v. Alabama Central Credit Union, 472 So.2d 1012, 1014 (Ala. 1985), quoting from Craft v. Standard Acc. Ins. Co., 220 Ala. 6,123 So. 271 (1929):
 "The discharge of claims by way of accord and satisfaction is dependent upon contract express or implied; and it follows that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction. Therefore, there must be (1) a proper subject-matter, (2) competent parties, (3) an assent or meeting of the minds of the parties, and (4) a consideration."
It is clear that for an accord and satisfaction to exist there must be an "assent or meeting of the minds of the parties." This meeting of the minds must extend to every element, including the subject matter, in order to create a valid contract. City of Montgomery v. Maull, 344 So.2d 492
(Ala.Civ.App. 1977).
A directed verdict motion must be viewed in a light most favorable to the opposing party. The case must be presented to the jury if the evidence or the reasonable inferences arising therefrom furnish a scintilla of evidence in support of the theory of the opposing party. Birmingham v. Wright,379 So.2d 1264 (Ala. 1980). It is clear from the testimony set forth above that a scintilla of evidence was presented to the jury that there was a meeting of the minds between Hancock and Hampton, because Hancock testified that he understood that he would not be sued if he signed the papers. We are of the opinion that the trial court did not err, therefore, when it refused to grant a directed verdict on the Bank's claim for a deficiency, because there was evidence presented that there was an accord and satisfaction.
 II
The second issue presented is whether the trial court erred when it denied Farmers and Merchants Bank's motion for a directed verdict as to Hancock and Centre's counterclaims of bad faith repossession and commercially unreasonable sale. Farmers and Merchants Bank further contends that Hancock was not entitled to recover on the counterclaims in his individual capacity and that the trial court erred when it denied the Bank's motion to dismiss. The Bank also contends that no facts were alleged in the counterclaim to justify the claim of wrongful repossession *Page 311 
and commercially unreasonable sale, and that the trial court should have directed a verdict in its favor on these claims.
Both notes had signatures on the "borrower's signature" line of Centre Chain Saw and L.W. Hancock. Hancock also signed as guarantor of the notes and signed individually as borrower on the face of the notes where the note form provides for an insurance disclosure statement. From the face of the notes, it appears that Hancock signed as a borrower, as well as an agent for Centre. He also signed as guarantor. The trial court correctly denied Farmers and Merchants Bank's motion to dismiss Hancock's individual counterclaim, and the Bank's motion for a directed verdict.
The Bank contends that the undisputed evidence shows that it had a right to repossess the trucks because it believed that the prospect of payment of the notes was impaired. The Bank cites § 7-1-208, Code 1975, which provides:
 "A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised. (Acts 1965, No. 549, p. 811.)" (Emphasis supplied.)
Under this statute, the Bank was charged with the duty to exercise good faith in the repossession process and the evidence at trial was not sufficient for the jury to find that this was a good faith repossession. The notes that the Bank foreclosed on had not matured. There was also testimony presented that the Bank had never foreclosed on a note before the end of its term. There was evidence presented which indicated that Hancock had an excellent credit history with the Bank, that Hancock had done business with the Bank for over 47 years, had never had an overdraft, and had never been late with a payment. He had signed over a thousand promissory notes and had always paid the principal and interest on those notes. The officers who handled the transactions involving the notes testified that they knew of no significant change in Hancock's financial condition from the time the notes in question had been made until the trucks were turned over to the Bank in June 1982. There was testimony presented to indicate that Hampton told Hancock that if he would sign the foreclosure releases, the Bank would not sue him; therefore, there was ample evidence before the trial court to deny the Bank's motion for directed verdict as to the wrongful repossession claim.
We are also of the opinion that the trial court did not err when it refused to grant a directed verdict in favor of the Bank as to the counterclaim which averred that there was a commercially unreasonable sale. This Court stated in FirstNational Bank of Dothan v. Rikki Tikki Tavi, Inc.,445 So.2d 889, 890 (Ala. 1984):
 " 'The principal limitation on the secured party's right to dispose of collateral is the requirement that he proceed in good faith (Section 7-1-203) and in a commercially reasonable manner. See Section 7-9-504.' Code 1975, § 7-9-507, Comment 1. '[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.' Code 1975, § 7-9-504(3). The sufficiency of the price obtained at a sale authorized by Code 1975, § 7-9-504, is one of the 'terms' of the disposition, and is relevant to whether the sale was commercially reasonable. Associates Finance Company of Nebraska v. Teske, 190 Neb. 747, 212 N.W.2d 572 (1973); First National Bank of Bellevue v. Rose, 188 Neb. 362, 196 N.W.2d 507 (1972)."
In this case, the evidence reveals that the two trucks, valued together at $75,500 to $80,000, were sold for only $30,000. The jury could have also considered the fact that Travis James, a member of the board of directors of the Bank, purchased one of the trucks for $10,000 although it was *Page 312 
worth $33,000. James and the Bank's attorney were the only ones at the sale, and James later traded the equipment and received for it $8,000 more than his purchase price. Consequently, there was much more than a scintilla of evidence in this case that the disposition of the trucks was not made in a commercially reasonable manner.
 III
The third issue presented is whether the trial court erred when it refused to grant Farmers and Merchants Bank's motion for a new trial based on newly discovered evidence. Hancock testified at trial that he was unable to borrow money after his new credit report was released after the foreclosure. Farmers and Merchants Bank contends that it discovered evidence after trial which was in direct conflict with Hancock's testimony that he had been unable to obtain financing after the Bank foreclosed on his property, because of a bad credit rating.
Ordinarily, the granting of a motion for a new trial rests within the sound discretion of the trial court. StaufferChemical Co. v. Buckalew, 456 So.2d 778 (Ala. 1984). In order for a party to prevail on a motion for new trial based on newly discovered evidence, the appellant must show that the evidence at issue:
"(1) was discovered since trial;
 "(2) could not have been discovered with the exercise of reasonable diligence before trial;
"(3) is material to the issue;
"(4) is not merely cumulative or impeaching; and
 "(5) is of such a nature that a different verdict than that already obtained probably would result if a new trial were granted."
Welch v. Jones, 470 So.2d 1103, 1112 (Ala. 1985) (second rehearing opinion).
The trial court, in exercising its discretion, could have concluded that Farmers and Merchants Bank could have discovered the evidence if it had exercised due diligence. The Bank could have fully cross-examined Hancock at trial concerning his ability to obtain further loans but failed to do so. We are of the opinion that the trial judge did not abuse his discretion when he failed to grant Farmers and Merchants Bank's motion for a new trial based on newly discovered evidence.
 IV
The fourth issue for this Court's consideration is whether the doctrine of "res inter alios acta" applies to this case. Farmers and Merchants Bank contends that throughout the entire prosecution of the counterclaim, Centre Chain Saw and Hancock attempted to arouse the passion and sympathy of the jury for Hancock and his wife. The Bank argues that counsel, in an attempt to arouse the passion of the jury against the Bank, asked the following question of a former employee of the Bank:
 "Mr. Thompson: Mrs. Poovey, I have one final question. During the many years that you've testified to that you were in the loan department at Farmers and Merchants Bank were you ever aware of the bank calling a loan such as Mr. Hancock had when you left on March 25, 1982, and January 15, 1982 —
"Mr. Riley: Objection, Your Honor —
 "Q. — before the loan — before the maturity date of the loan and asking for the collateral to be delivered to the bank?
"Mr. Riley: Objection.
 "Q. Other than Mr. Hancock's case, do you know of any other case where that's happened?"
The Bank's counsel offered the following objection to the question:
 "Mr. Riley: You through, Charlie? Objection, Your Honor. That is highly immaterial. It's not probative. It's not relevant. It does not tend to prove or disprove any of the evidence or the facts or issues in this case. Moreover, I would offer the court — suggest the court consider this as being similar to a subsequent remedial measure in a negligence case. It would be highly prejudicial to my client, irrespective of the answer. It has nothing to do with the matters to be tried in this case." *Page 313 
The trial court overruled the Bank's objections and allowed the witness to testify, as follows:
 "Q. Do you know of any other occasion, other than Mr. Hancock's case?
 "A. First of all I was not at the bank when Mr. Hancock — the date y'all have said this collateral was brought back or picked up or whatever happened to it. But during the times I was at the bank I don't remember the bank having picked up equipment or anything, collateral of any [kind], when the note wasn't past due.
"Q. When it was not past due?
"A. Uh-huh, yes, sir."
The Bank argues forcefully that the court also erred in permitting testimony of Hancock's wife. The argument of the Bank regarding Mrs. Hancock's testimony is set forth in the brief, as follows:
 "First, counsel for Hancock got Mrs. Hancock to testify that she was known in the community as 'Miss Leafie.' This was a skillful maneuver on the part of counsel because it established 'Miss Leafie' as a 'down-home, Mayberry-type lady' whose testimony about the fate of her husband victimized by the cruel Bank was made even more compelling. Several questions and answers were elicited from 'Miss Leafie' over the objection of counsel for the Bank and these rulings by the trial court were clearly erroneous and greatly prejudiced the Bank.
 "For example, the following occurred which was highly prejudicial to the Bank:
" 'Q. Has he been hospitalized?
" 'A. Yes. He was hospitalized.
" 'Q. What caused that, please, ma'am?
 " 'Mr. Shumaker: We're going to object, Your Honor.
 " 'Mr. Riley: Objection. Ma'am, please. this witness isn't able to testify what caused Mr. Hancock's hospitalization, especially if they're trying to tie it into something that happened in the financial matter.
 " 'The Court: I'll allow her to testify generally as to why he was in the hospital.
 " 'Q. Why did he go to the hospital, please, ma'am?
 " 'A. It was the morning of the 19th of December, 1982, and he hadn't been to bed all night. He had just walked the floor, and sometime in the early morning he fell and broke a vertebra in his back and was admitted to the hospital, and he was comatose for two days, and he was in the hospital for ten days.'
"Again, the following occurred:
 " 'Q. Just tell what's happened about the finances, please, ma'am.
 " 'A. Well, my family has helped me, too, all of my brothers and sisters, because we live close to Mama and we took care of her for about 17 years before she died, and they were grateful and they were glad that they could do something for us. I have a check in my pocket right now for $1,000.00 that my sister gave me as a gift.
 " 'Mr. Riley. Objection, Your Honor. That's totally irrelevant and immaterial to the issues here in this case. It's non-responsive to the question.
" 'The Court: Overrule the objection.
 "These two episodes are as prejudicial in a case of this type as any evidence one could imagine. Of course, the object of the adversarial system is for opposing counsel to introduce evidence that is prejudicial to the other side. The proper question, therefore, is whether or not the evidence is relevant and material so that its prejudicial nature is not a subject of consideration. The above testimony by 'Miss Leafie' is clearly not material or relevant since the mental anguish or loss of credit rating suffered by Mr. Hancock is not a recoverable item of damages under the only affirmative claim submitted to the jury by the trial court, wrongful repossession and commercially unreasonable sale of the trucks. Under the rules in the cases cited above the Bank is entitled to a new trial because of this prejudicial testimony."
The term "res inter alios acta" means "things done between strangers." *Page 314 
"The doctrine is a rule of evidence which excludes evidence of the acts and declarations of non-parties to the lawsuit, or dealings of parties with non-parties, on the ground of irrelevancy." Loftin's Rent-All, Inc. v. Universal PetroleumServices, Inc., 344 So.2d 781 (Ala.Civ.App. 1977). The focus of the rule of "res inter alios acta" is upon the relevancy of the evidence, rather than the fact that the evidence involves the acts or declarations of a non-party. Evidence, even though it be the acts or declarations of a non-party to the suit, is not within the scope of the doctrine. Loftin's Rent-All, Inc.v. University Petroleum Services, Inc., supra.
We are of the opinion that the testimony of the Bank employee was properly admitted into evidence. The Bank employee stated that in the many years that she worked at the bank she had known the practices of the Bank, and that the Bank would repossess collateral only in the event of default when the note was past due and was unpaid. The issue of good faith on behalf of the Bank was one of the critical issues in the case. The Bank employee's testimony established facts from which the jury could find that the Bank showed a lack of good faith in its repossession of the trucks and departed from a longstanding practice of the Bank.
Mrs. Hancock's testimony about her husband's physical and mental health was relevant to prove Hancock's claim for mental anguish. There was no error here.
 V
The final issue presented is whether the damages awarded in this case warrant reversal. Farmers and Merchants Bank contends that the actual damages awarded were excessive. The Bank also contends that the award of punitive damages and damages for mental anguish in this case were improper.
While the trial court did not err when it refused to grant a directed verdict as to Hancock and Centre's counterclaims of wrongful repossession and commercially unreasonable sale, we are of the opinion that the jury was erroneously permitted to award actual damages to Hancock and Centre on their claim for commercially unreasonable sale once the jury found in their favor on their accord and satisfaction defense. As we have previously stated, Hancock and Centre claimed a defense of accord and satisfaction against Farmers and Merchants' claim of a deficiency judgment. This defense was based on a conversation which occurred prior to the Bank's securing Hancock's signature on foreclosure releases. The Bank obtained Hancock's signature on the releases by promising him that if he signed the releases it would take no further action against him.
If the jury determined that an accord and satisfaction existed between the parties, it necessarily found in favor of Hancock and Centre on their claim that the debt was satisfied when Hancock turned over the trucks to the Bank. Because the amount of the debt thus extinguished exceeded the amount the trucks would have sold for if the Bank had conducted a commercially reasonable sale, Hancock and Centre should not be allowed to recover any damages in their claim for commercially unreasonable sale. Damages resulting from the commercially unreasonable sale would have been permitted only if the jury had not resolved the accord and satisfaction issue in Hancock's and Centre's favor. A different result would obtain, however, with respect to damages for any loss of use of the trucks resulting from the Bank's wrongful foreclosure, because wrongful foreclosure damages are not inconsistent with Hancock's and Centre's accord and satisfaction defense.
We will now discuss whether the award of punitive damages and damages for mental anguish in this case were improper.
The trial court charged the jury that if they found the repossession process was wrongful and attended by circumstances of "insult, malice or oppression" or was intentionally committed knowing that the act was wrongful then the jury could award punitive damages. The jury returned a verdict which stated: *Page 315 
 "We, the jury, find the issues in favor of the defendants on the counterclaim and against the plaintiff and assess actual damages in the sum of $98,000 and punitive damages in the sum of $30,000 and additionally assess damages for mental anguish against the plaintiff in favor of L.W. Hancock in the additional sum of $20,000."
In Ott v. Fox, 362 So.2d 836 (Ala. 1978), a wrongful repossession/commercial unreasonableness case, this Court found that the wrongful repossession claim could also be considered as a conversion claim. This Court stated:
 "To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse. Webb v. Dickson, 276 Ala. 553, 165 So.2d 103 (1964); and State Farm Mutual Automobile Insurance Co. v. Wagnon, 53 Ala. App. 712, 304 So.2d 216 (1974). The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession. Jones v. Americar, Inc., 283 Ala. 638, 219 So.2d 893 (1969). Russell-Vaughn Ford, Inc. v. Rouse, 281 Ala. 567, 206 So.2d 371 (1968); and State Farm, supra. And a wrongful repossession of personalty will support such a claim. See Ford Motor Credit Co. v. Jackson, 347 So.2d 992 (Ala.Civ.App. 1977); and Wells, [v. Central Bank of Alabama, N.A., 347 So.2d 114
(Ala.Civ.App. 1977)]."
Ott v. Fox, at p. 839.
This Court then held that punitive damages may be awarded in an action for conversion, even though not alleged in the complaint, where the evidence justifies such an award. We are of the opinion that the trial court did not err in charging that punitive damages could be awarded in this case, because the jury could have found that the repossession was conducted in an oppressive and insulting manner. See Big Three Motors v.Rutherford, 432 So.2d 483 (Ala. 1983).
We are of the opinion that, based on the same evidence, the jury was authorized to award $20,000 in damages for mental anguish. This Court, in Taylor v. Baptist Medical Center, Inc.,400 So.2d 369 (Ala. 1981), held that recovery may be had for mental suffering caused by culpable tortious conduct, even where there is no accompanying physical injury. There was some testimony that Hancock's physical condition deteriorated as a result of the wrongful repossession; consequently, under the rule announced in Baptist Medical Center, we believe the award was not improper. Courts in other jurisdictions have allowed recovery for mental anguish in wrongful repossession cases. See, Sherwood v. Bellevue Dodge, Inc., 35 Wn. App. 741,669 P.2d 1258 (1983); Boisdore v. International City Bank TrustCo., 361 So.2d 925 (La.App. 1978); First Security Bank TrustCo. v. Roach, 493 S.W.2d 612 (Tex.Civ.App. 1973); Ebert v.Babin, 200 So.2d 672 (La.App. 1967).
One problem remains: The jury's verdict for "actual damages in the sum of $98,000" was based upon two separate claims — one for wrongful repossession and one for commercially unreasonable sale. Because the jury, in returning a verdict against the Bank on its deficiency claim, found for Hancock and Centre on their accord and satisfaction defense, that portion, if any, of the $98,000 verdict for actual damages awarded on the commercially unreasonable sale claim is unauthorized; but that portion, if any, of the actual damages awarded on the wrongful repossession claim is authorized. The jury, however, returned a general verdict with respect to the two separate claims; thus, it is impossible to discern which portion, if any, is properly ascribable to which claim. See Aspinwall v.Gowens, 405 So.2d 134 (Ala. 1981).
We resolve this problem by permitting Hancock and Centre to elect whether to accept the judgment less the full amount of actual damages, or to suffer a reversal and remand of this cause for a new trial. *Page 316 
For the above reasons, Hancock and Centre shall, within 30 days after this date, file a remittitur, pursuant to §12-22-71, Code 1975, of $98,000; otherwise the judgment will stand reversed. Let notice issue to Hancock and Centre accordingly. If they shall timely file such a remittitur, the judgment awarding $30,000 punitive damages and $20,000 damages for mental anguish will be affirmed.
AFFIRMED CONDITIONALLY.
JONES, ALMON, BEATTY, HOUSTON and STEAGALL, JJ., concur.
SHORES and ADAMS, JJ., concur in the result.
TORBERT, C.J., concurs, in part; and dissents, in part.