ALMON, Justice.
This appeal arises from a suit by a creditor bank for the balance due on a note after the sale of property securing the note. The debtor counterclaimed, alleging sale of the property in a commercially unreasonable manner. The trial court granted summary judgment for the bank on the counterclaim and awarded the bank $24,-297.17 after conducting a trial on the complaint. In addition to issues on the merits of the counterclaim and a related set-off defense, the appeal presents an issue of whether the trial court erred in denying a motion for continuance.
Between October 20,1978, and March 12, 1979, Jefferson Industrial Fabricators, Inc., by its president, D.E. Myrick, and its secretary, Fred Huey, executed three notes to Central Bank of Birmingham (now Central Bank of the South, but in either case hereinafter referred to as “Central Bank”). The first note, in the amount of $20,000, was secured by certain property owned by Jefferson Industrial Fabricators, and all three notes were guaranteed by Myrick and Huey. On December 28, 1979, Jefferson Industrial Fabricators filed a petition in *184 bankruptcy. Central Bank received notice of the bankruptcy proceedings on January 9, 1980, and declared the loans in default shortly thereafter.
On February 15, 1980, Central Bank sent notice to Myrick and Huey that it would sell the secured property at a private sale “at any time after ten (10) days.” Central Bank apparently accepted bids through March and April and, on April 24, sent a letter to Huey telling him that bids would be closed on May 1. The letter, from Warren Kennedy, an assistant collection manager, concluded, “If you have someone who wishes to bid on the equipment, please contact me at my office no later than May 1, 1980.” Huey apparently informed the bank that Robert Herring was interested in purchasing the equipment if he could purchase all of the equipment in the Jefferson Industrial Fabricators shop. Herring, however, did not submit a bid, and the property was sold on a bid of approximately $5,000.
On February 10,1981, Central Bank filed the complaint in this case against Myrick and Huey, seeking $13,254.39 due on the notes, plus interest and attorney’s fees. The complaint recited that two notes were attached as Exhibits A and B.[1] An amendment to the complaint added as Exhibit C the third note mentioned above. All three notes are included as exhibits in the record.
Myrick was never served with process. Huey filed an answer and counterclaim. The answer asserted as an affirmative defense
“that the plaintiff, upon the exercise of its rights to repossess and sell the collateral set out in the notes attached to the complaint[,] failed to exercise reasonable care and reasonable commercial business practices through negligence or deliberate failure. Defendant asserts that buyers were presented to the plaintiff willing to pay the balance of any indebtedness due for the collateral yet plaintiff failed and refused to assemble collateral and sell all collateral together. Defendant asserts that the plaintiff failed to repossess certain pieces of the collateral provided for in [Exhibits] A and B to the plaintiff’s complaint and, as a result, that collateral was sold by the bankruptcy trustee for Jefferson Industrial Fabricators, Inc. at far less than market value[,] thus resulting in the failure, through its own negligence, of the plaintiff to obtain full payment of the outstanding indebtedness referred to in the complaint. Defendant asserts that the plaintiff, by failing to use reasonable commercial practices with respect to the assembling and sale of collateral is both negligent and in breach of the written agreement contained in Exhibits A and B to the plaintiff’s complaint.”
The counterclaim and the amendments thereto generally allege negligence or breach of contract in failing to act in good faith and in a commercially reasonable manner in collecting, assembling, and selling the collateral.
Code 1975, § 7-9-504(3), provides in part: “Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.”
Section 7-9-507 provides remedies to the debtor in cases where the sale by the creditor is not commercially reasonable. See Farmers & Merchants Bank of Centre v. Hancock, 506 So.2d 305 (Ala.1987); First National Bank of Dothan v. Rikki Tikki Tavi, Inc., 445 So.2d 889 (Ala.1984); First Alabama Bank v. Parsons, 426 So.2d 416 (Ala.1983); Valley Mining Corp. v. Metro Bank, 383 So.2d 158 (Ala.1980).
Huey’s assertion that Central Bank could have received the entire amount due on the loans if it had sold the entire property to Huey’s bidder is not supported by the *185 documents and deposition testimony before the court on the summary judgment motion. The list of property attached as security for the first loan does not include all of the shop property. One of the major items on that list was subject to a prior lien and was repossessed by the superior creditor. Thus, it is clear that Central Bank was not in a position to sell all of the property as a unit. Furthermore, no bid for all of the property was submitted and Huey did not present any affidavit by Herring or anyone else stating that a bid would have been submitted if all of the property had been available as a unit.
Under the terms of the notes, Central Bank had the right to repossess and sell the collateral. In response to the summary judgment motion, Huey had the burden of showing that there was a genuine issue of material fact regarding his claim that the sale was not conducted in a commercially reasonable manner. Rule 56, A.R.Civ.P. Huey’s claim that Central Bank acted unreasonably in failing to collect all of the equipment owned by Jefferson Industrial Fabricators was not supported by the materials he presented in opposition to the motion. Therefore, the trial court did not err in granting the summary judgment. Huey presented nothing of any more probative value on this issue at trial, so his argument that the judgment is due to be reversed for failure to allow a set-off against the bank’s claim likewise fails.
Huey also argues that the trial court erred in refusing to grant a continuance of the trial. During the pendency of this action, Huey was seriously injured by a shotgun blast. Continuances were granted on December 11, 1984; April 17, 1985; and September 24, 1985, based on his doctor’s opinion that his recovery would be hampered by, and his condition would not allow, participation in a trial. Another motion to continue was filed on December 6, 1985, but the court held the trial on December 12. - At the time it granted the motion for continuance on April 17, the court included the following in its order:
“The court will not continue this case again for the same ground and the court directs that said defendant should be deposed whereby such testimony may be available at the next setting of this case in the event of continued illness of said defendant.”
No such deposition was taken, and Huey’s testimony was submitted by way of a deposition he had given on May 28, 1981. See Rule 32(a)(3)(C), A.R.Civ.P.
It is within the discretion of a trial court whether to grant a continuance. Selby v. Money, 403 So.2d 218 (Ala.1981). The court granted continuances for a full year on the basis of Huey’s illness; it even granted one after it had given Huey notice that it would grant no further such continuances. We note also that the motion filed on December 6 is reflected only on the case action summary sheet; no written motion is included in the record. The trial court made sufficient effort to accomodate Huey, and nothing in the record shows an abuse of discretion in denying whatever motion was made on December 6.
The judgment is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.

. The complaint in the clerk's record before us does not include these notes. As can be seen from the portion of the answer quoted later in this opinion, Exhibit A apparently was the first note, which was secured by the shop equipment, and Exhibit B apparently was the second note, which was secured by a pickup truck.