ALMON, Justice.
This is an appeal from a judgment on a cross-claim filed by Monty Smith against Clayton Homes of Decatur, a division of Clayton Homes of Alabama, a corporation (“Clayton Homes”), seeking damages for conversion of a welding torch set. The jury returned a $50,527 general verdict for Smith, and the trial court entered judgment on the verdict. Clayton Homes raises issues regarding the denial of its motion for directed verdict on grounds of improper *273 venue, sufficiency of the evidence of conversion, and propriety of the punitive damages award.
In December 1984, Woody Woodcock, manager of Clayton Homes, asked Smith to bring his torch set to Clayton Homes’ lot to thaw water pipes. Smith worked for Clayton Homes; he used the torch set on that occasion and then continued to use the torch set in his work for Clayton Homes and, apparently with Woodcock’s permission, kept the set in the storage garage.
By February 1985, Terry Jordan replaced Woody Woodcock as manager of Clayton Homes in Decatur. On February 5, 1985, Smith noticed that his torch set was missing. A salesman at Clayton Homes in Decatur told Smith that Terry Jordan had taken the set to Clayton Homes’ home office in Knoxville, but it was unclear whether it was Jordan or another employee of Clayton Homes who actually transported the torch set to Knoxville.
Smith told Jordan by telephone that the torch set belonged to him. Jordan said he would return the set. Smith also talked to Jordan in person at the Clayton Homes lot in Decatur and Jordan promised Smith that he would bring back the torch set the next time he went to Knoxville. Jordan never returned the torch set.
In mid-February 1985, Ron Theobold replaced Terry Jordan as Clayton Homes’ Decatur manager. On March 7, 1985, Smith asked Theobold about the torch set. Theobold told Smith that if Smith would give him a bill for the torch set, he would send the bill to Clayton Homes’ home office in Knoxville. Smith gave him a $425 bill on March 7, 1985. Theobold neither paid Smith nor returned the torch set.
In October 1985, Jim Clayton Jr. (“Clayton”), replaced Theobold as manager of Clayton Homes in Decatur. In January 1986, Smith talked to Clayton about the torch set. He explained to Clayton the history of the torch set’s being taken and of his attempts either to get the torch set back or to obtain payment. Clayton told Smith that if Smith would submit another bill then he would see that the bill would be “taken care of.” Smith gave Clayton a bill for $425 on January 10,1986. After Smith gave Clayton this bill, Smith was not contacted again by Clayton or Clayton Homes.
In the meantime, Clayton Homes had repossessed a mobile home purchased by Leona Eady. She filed a complaint against Clayton Homes on January 22, 1986, alleging conversion of her air conditioning unit. On April 15, 1986, Clayton Homes filed a motion to dismiss. The motion did not raise improper venue as a defense. Clayton Homes answered Eady’s complaint.
Eady amended her complaint to include a claim against Smith. Smith answered Eady’s complaint and cross-claimed against Clayton Homes for the torch set. On February 5, 1987, Clayton Homes responded with a motion for severance of Eady’s claim from Smith’s; the trial court overruled that motion. The motion did not raise any allegation of improper venue. On March 27,1987, Clayton Homes answered Smith’s cross-claim. In that answer Clayton Homes first raised improper venue as a defense.
On the morning of the trial, March 30, 1987, Leona Eady settled her claims against both defendants. The trial court dismissed her claims from the lawsuit and held a trial of Smith’s cross-claim against Clayton Homes. At the close of all the evidence, Clayton Homes moved for a directed verdict based on improper venue and on Smith’s alleged failure to provide a scintilla of evidence of conversion. The court denied these motions.
The jury returned a $50,527 general verdict for Smith, and the trial court entered judgment on the verdict on April 3, 1987. Clayton Homes filed a motion for judgment notwithstanding the verdict, a motion for new trial conditioned upon Smith’s failure to accede to a remittitur, and a motion for new trial. The trial court denied these motions.
On appeal, Clayton Homes argues first that the trial court should have directed a verdict in its favor because the action was filed in an improper venue. Without passing on this argument in any other respect, we note that Clayton Homes waived *274 the defense of improper venue when it filed its motion to dismiss Eady’s complaint on April 15, 1986, without including a defense of improper venue. See Rule 12(b)(3), —(b)(6), —(g), and —(h)(1), A.R.Civ.P. Because the defense of improper venue was waived as to the complaint, the addition of the cross-claim was proper “without regard to whether that county would be a proper venue for an independent action on such claim[ ] or against such parties.” Rule 82(c), A.R.Civ.P.
Clayton Homes next argues that the evidence presented by Smith did not justify submitting the conversion claim to the jury, and that the trial court therefore erred in denying Clayton Homes’ motions for a directed verdict and judgment notwithstanding the verdict.
A plaintiff can establish a claim of conversion by proving (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse of property, or (4) a wrongful detention or interference with property. Sadie v. Martin, 468 So.2d 162, 165 (Ala.1985); Citizens Bank v. Coffee County Bank, 431 So.2d 1203, 1207 (Ala.1983). Smith presented evidence that three managers of Clayton Homes — Terry Jordan, Ron Theobold, and Jim Clayton Jr. —failed to return Smith’s torch set even though they all conceded that Clayton Homes should either pay for it or return it. Smith’s evidence was further strengthened by the cross-examination of Jim Clayton Jr., by Smith’s attorney, Dan Nelson:
“Nelson: ... You asked [Smith] to fill you out a bill, correct? And he did that.
“Clayton: Correct.
“Nelson: Then you called Terry Jordan?
“Clayton: Correct.
“Nelson: He didn’t say anything except T don’t have it,’ is that right?
“Clayton: And to call Bill Dunlap [regional manager of Clayton Homes].
“Nelson: Then you called Bill Dunlap ... [and] you explained the situation to him, is that right?
“Clayton: Correct.
“Nelson: Well did he tell you, forget it, not pay him or what?
“Clayton: I’m not sure what he told me to do.
“Nelson: But did you tell the jury a few minutes ago [that] the company is not going to pay [Smith] because he had not reported it stolen?
“Clayton: Correct.
“Nelson: The company was not going to pay because he had not reported it stolen; is that right?
“Clayton: Correct.
“Nelson: Well I assumed you handled it according to the regional manager’s advice; is that not true?
“Clayton: Yes, sir.”
Accordingly, the jury was entitled to believe that in addition to the fact that three of Clayton Homes’ managers neither compensated Smith for his torch set nor returned it to him, Clayton Homes executive Bill Dunlap suggested that Smith should not be compensated because Smith had never reported as stolen the torch set that Clayton Homes had taken from Smith. From this evidence alone, the jury could find conversion based on wrongful detention. This evidence supports the trial judge’s denial of Clayton Homes’ motions for a directed verdict and a judgment notwithstanding the verdict.
Clayton Homes also contends that the punitive damages issue should not have been submitted to the jury. Clayton Homes neither moved for a directed verdict on the claim for punitive damages at the close of the evidence nor objected to the trial court’s instruction regarding punitive damages. Clayton Homes is precluded from raising this alleged error as a cause of reversal, Rule 51, Ala.R.Civ.P., C & S Financial Services v. Bradley, 501 So.2d 1218, 1220 (Ala.1987).
Clayton Homes argues, finally, that the jury’s award is excessive and that the trial court erred in not ordering a remit-titur or a new trial. Smith testified that he paid $425 for the torch set and that it would have cost $810 to replace it. Thus, the major portion of the award was punitive damages. Punitive damages are recoverable in a conversion action when the evidence shows legal malice, willfulness, *275 insult, or other aggravating circumstances. Rainsville Bank v. Willingham, 485 So.2d 319 (Ala.1986).
An award of punitive damages is within the sound discretion of the jury, which may consider all attendant circumstances. Roberson v. Ammons, 477 So.2d 957, 961 (Ala.1985). The jury’s award is to punish the wrongdoer based upon the enormity of the wrong and to prevent similar wrongs from being committed in the future. Id.
After a hearing on the motion for new trial, the trial court ruled that the damages were not due to be reduced or set aside. There is no indication that the verdict was the result of bias, passion, or prejudice, and the trial court did not err in entering judgment on the verdict or in denying a remit-titur. See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986).
Because the trial judge did not err in regard to any of the issues presented for review, his judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES and SHORES, JJ., concur.
HOUSTON, J., concurs specially.