854 So.2d 124 (2003)
K.L.R.
v.
L.C.R.
2010823.
Court of Civil Appeals of Alabama.
January 24, 2003.
*125 Kenneth J. Lay of Legal Services of Metro Birmingham, Birmingham, for appellant.
Corey B. Moore and Candace Stewart-Magee of Weathington & Moore, Moody, for appellee.
THOMPSON, Judge.
L.C.R. ("the father") and K.L.R. ("the mother") were divorced by a December 8, 1993, judgment of the Jefferson Circuit Court, Bessemer Division; that judgment incorporated an agreement reached by the parties. Pursuant to the divorce judgment, custody of the parties' son and daughter was awarded to the mother. The circuit court later entered a 1998 modification judgment that also incorporated an agreement of the parties; the 1998 modification judgment increased the father's visitation with the children.
*126 On September 10, 2001, the Department of Human Resources ("DHR") took the children into protective custody because it found that the mother was inadequately supervising the children. On September 12, 2001, the Family Court of Jefferson County (hereinafter "the juvenile court") awarded the father temporary custody of the children. The next day, the father filed a petition in the Jefferson Circuit Court (hereinafter "the trial court") seeking to modify custody of the children. Upon learning of the father's action in the trial court, the juvenile court transferred to the trial court the action relating to the children that was then pending in the juvenile court.
On October 3, 2001, the mother filed in the trial court a motion to dismiss the father's modification petition. In that motion, the mother argued only that there had been no material change in circumstances that would justify a modification of custody of the parties' two children. On October 10, 2001, the mother filed a motion seeking to transfer the action, on the basis of improper venue, to the Bessemer Division of the Jefferson Circuit Court. The trial court denied that motion.
The trial court received ore tenus evidence over the course of a two-day hearing in January 2002. On February 8, 2002, the trial court entered a judgment that awarded custody of the parties' children to the father, ordered the mother to pay child support, and awarded the mother "the right of reasonable access [to] visitation" with the children. Both parties filed postjudgment motions; the trial court denied those motions. The mother appealed.
At the time of the January 2002 hearing, the parties' son was 14 years old and their daughter was 13 years old. The testimony at trial indicated the following. On September 9, 2001, after the father left the son and daughter at the mother's house following his weekend visitation, the children discovered that the mother was not at home. When the mother did not return after several hours, the son became concerned and telephoned one of his teachers. The teacher and the children were unable to locate the mother that evening. The son spent that night with another of his teachers; the daughter stayed with a friend.
The next day, September 10, 2001, the children went to school and, when the mother did not respond to the school authorities' attempts to reach her, the school authorities telephoned the police and DHR. Police officers and a DHR social worker went to the school. One of the son's teachers testified that the mother answered the telephone at her home at approximately 10:30 that morning and that she informed the teacher that she had been "out" the night before. The mother did not go to the school after the son's teacher reached her by telephone. The school authorities telephoned the father; the father arrived at the school within 30 minutes of being contacted. The children went home with the father on the afternoon of September 10, 2001, and they have remained in the father's home since that time.
The mother testified that she had attended a meeting of Alcoholics Anonymous on the night of September 9, 2001. She contended that someone at the children's school had told her it was not necessary for her to come to the school on September 10, 2001.
Both parties admitted using illegal drugs and drinking alcohol during their marriage. At the hearing, the father testified that he had not used illegal drugs in 10 years. The father testified that he drank beer and, on occasion, whiskey. The father has been employed at the same job for 11 years. The father testified that *127 he had moved seven or eight times since the parties' divorce in 1993. Shortly before the children came into his custody in September 2001, the father purchased a house. The father, his new wife, her two children, and the parties' two children all live in that house; each child has his or her own bedroom.
The mother is a recovering alcoholic who admits that she suffered a relapse during a weekend in late August 2001. The testimony about that relapse, which was provided by acquaintances of the mother, indicates that the mother was drinking gin, that she danced naked in a public street, and that she attempted to purchase illegal drugs. The mother testified that she had no recollection of that relapse.
The mother denied that she had used illegal drugs or alcohol on any occasion other than that weekend in late August 2001, when she suffered a relapse. However, at the time they were taken into protective custody, the children made statements indicating that they had seen the mother using illegal drugs. The daughter also alleged that the mother and the mother's boyfriend had offered her marijuana.
In addition, a friend of the mother's testified that before and shortly after the August 2001 incident, he had seen the mother's automobile at a house known as a place where illegal drugs could be purchased. The mother's brother testified that the mother had telephoned him from a bar in October 2001 and had asked him to pay for her drinks at the bar; he testified that he had refused to do so. Also, the father submitted into evidence the transcripts of several conversations in November 2001 between the mother and R.H., the father's brother-in-law, who the father testified is a drug addict. Those conversations had been tape-recorded. In those conversations, R.H. made arrangements to purchase illegal drugs from the mother.
The father testified that he has forbidden R.H. from coming to his home. However, the children testified that between the time they arrive home from school in the afternoons and the time the father or their stepmother arrives home from work, R.H. often visits the father's home. The children testified that they had not told the father that R.H. was still coming to the father's house when the father was not at home.
The daughter has made two allegations of sexual abuse since September 2001. The first allegation was made against the mother's boyfriend, whom the daughter accused of touching her inappropriately. She made similar allegations against a teenaged friend of her stepbrother. A DHR social worker testified that DHR had investigated those allegations and had determined that they were either untrue or "not indicated."
The father acknowledged that his relationship with the children has been strained since they came to live with him in September 2001. Shortly after he went to live with the father, the son threatened to commit suicide. The father testified that, as a result of that threat, the son has been in counseling since mid-October 2001.
The father testified that the children were generally distant or withdrawn when they returned from visitation with the mother. The mother testified that there was "a great possibility" that she had made comments to the daughter indicating she would like to harm the father's new wife. The mother also admitted that she had told the children that if they misbehaved and were disruptive while they were living with the father, the father would send them back to live with her.
*128 During the testimony in which the mother admitted that she had encouraged the children to be disruptive at the father's house, the trial court interrupted the hearing to warn the mother that if she continued to make such comments to the children he would order that she be incarcerated for contempt. The trial court also warned the mother that her behavior increased the possibility of the children's getting into trouble and being placed in detention.
On the second day of the hearing, both the daughter and the son were called as witnesses. The daughter testified that, during breaks in the hearing the day before, the mother had spoken to her about the progress of the case. The trial court interrupted the daughter's testimony in the following exchange:
"[TRIAL COURT]: Well, let me ask you a question, ma'am. Now, look up here at me. Do not look at anyone else. You say your mom talked to you about what was going on in here?
"[DAUGHTER]: Yes, sir.
"[TRIAL COURT]: About who was testifying and what they were saying?
"[DAUGHTER]: No, sir. She would say stuff like, it is looking good for us, or it is looking bad. She would not say who was talking.
"[TRIAL COURT]: And when did she do this? Did she do this this morning?
"[DAUGHTER]: Yesterday.
"[TRIAL COURT]: Yesterday?
"[DAUGHTER]: Yes, sir.
"[TRIAL COURT]: And did she tell you who was testifying?
"[DAUGHTER]: No, sir.
"[TRIAL COURT]: What they were saying?
"[DAUGHTER]: No, sir. I mean, we could see them walking in, but
"[TRIAL COURT]: I understand that. I am going to disqualify this witness. [The mother] is the one that requested the [witness-exclusion] Rule. You are excused, ma'am.
"[MOTHER'S ATTORNEY]: On what grounds, Your Honor?
"[TRIAL COURT]: She violated the Rule.
"[MOTHER'S ATTORNEY]: In what way?
"[TRIAL COURT]: [The mother] discussed what went on in here with this witness. I am going to disqualify this witness. You have your exception."
When the parties' son testified, the father's attorney questioned the son about whether, during the previous day's hearing, he had been reading one of the depositions taken in the case. The son answered that he did not think he had been reading a deposition but that he believed he had read some notes the mother had made; it is not clear when the mother made those notes. The son testified that he could not recall the content of the notes. The trial court allowed the son to testify.
The parties' son testified that he wanted to live with the mother. He also testified regarding an incident in which the father had hit the daughter and had struck the stepmother when she had attempted to intervene. The daughter had also testified regarding that incident before the trial court disqualified her as a witness.
The mother first argues that the trial court erred in denying her motion to transfer the action based on improper venue. The mother contends that the proper venue for the action was the Bessemer Division of the Jefferson Circuit Court because that court entered the parties' original divorce judgment and the 1998 modification judgment. The mother cites § 30-3-5, Ala.Code 1975, in support of her argument *129 that venue in the trial court was improper.
However, a party can waive the issue of improper venue by failing to assert that defense in a responsive pleading or in a motion to dismiss. In this case, on October 3, 2001, in response to the father's petition to modify custody, the mother filed a motion to dismiss the petition. In her motion to dismiss, the mother addressed only the merits of the father's petition; she did not raise the issue of improper venue. On October 10, 2001, the mother filed a motion seeking to transfer, on the basis of allegedly improper venue, the action from the trial court to the Bessemer Division of the Jefferson Circuit Court.
"Rule 12(b)[, Ala. R. Civ. P.,] ... requires that a claim of `improper venue' be made in the responsive pleading or in a motion filed before the responsive pleading." Ex parte Till, 595 So.2d 871, 872 (Ala.1992). Where a party fails to raise the defense of improper venue in a motion to dismiss, that defense is waived. Clayton Homes of Decatur v. Smith, 534 So.2d 272 (Ala.1988). We conclude that the mother, by failing to object to the alleged improper venue in her initial October 3, 2001, motion to dismiss, waived her objection to that issue. It is not clear whether the trial court, in denying the mother's motion to transfer the case on the basis of venue, considered the mother's failure to raise that issue in her motion to dismiss. However, this court may affirm a correct judgment of the trial court for any reason, even if the trial court did not consider that reason in making its ruling. Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998); Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala.1992).
The mother next argues that the trial court erred in refusing to appoint a guardian ad litem to represent the children in this matter. The mother cites § 26-14-11, Ala.Code 1975, which provides:
"In every case involving an abused or neglected child which results in a judicial proceeding, an attorney shall be appointed to represent the child in such proceedings. Such attorney will represent the rights, interests, welfare and well-being of the child, and serve as guardian ad litem for said child."
In making her argument on this issue, the mother argues that the trial court was required to grant her motion in which she sought the appointment of a guardian ad litem to represent the children because this matter started as a dependency action in the juvenile court and because of the daughter's allegations of sexual abuse.
The record indicates that the juvenile court awarded the father temporary custody of the children in September 2001. Shortly thereafter, the father sought to modify the custody provision of the parties' divorce judgment. The juvenile court then transferred the action pending in that court to the trial court. Thereafter, in the proceeding in the trial court, neither party alleged that the children were dependent pursuant to § 12-15-1(10), Ala.Code 1975. In its judgment, the trial court did not find the children to be dependent, and it did not purport to enter a dispositional custody order pursuant to § 12-15-71, Ala.Code 1975. In fact, the trial court dismissed that part of the action that had been transferred to it from the juvenile court. The only issue before the trial court was whether the custody provision of the parties' divorce judgment should be modified to award the father custody of the parties' two children. Therefore, we conclude that, although the juvenile court was involved in this matter in its early stages, the dispute before the trial court was in the nature of a custody dispute rather than a juvenile-dependency *130 action. See S.G. v. P.C., 853 So.2d 246 (Ala.Civ.App.2002) (holding that the dispute in that case was a custody dispute and not a dependency action); B.S.L. v. S.E., 826 So.2d 890 (Ala.Civ.App. 2002) (finding the action to be in the nature of a custody dispute rather than a dependency action).
In D.E.S. v. J.S., 603 So.2d 1064 (Ala. Civ.App.1992), a mother argued that the trial court had erred in failing to appoint a guardian ad litem to represent the interests of the child in a custody-modification proceeding. This court concluded that the requirement in § 26-14-11, Ala.Code 1975, that a guardian ad litem be appointed did not apply in the context of a custody-modification proceeding. In so holding, this court cited with approval a case holding that § 26-14-11 applied primarily to cases involving a civil proceeding against a child or to criminal proceedings involving the abuse of a child. D.E.S. v. J.S., 603 So.2d at 1066 (citing Burkett v. State, 439 So.2d 737 (Ala.Crim.App.1983)).
The mother has cited no authority other than § 26-14-11 for her argument that the trial court was required to appoint a guardian ad litem to represent the interests of the children and that it erred in not doing so. Based on the authority of D.E.S. v. J.S., supra, we cannot agree with the mother that the trial court erred in not appointing a guardian ad litem to represent the children in this custody-modification action.
The mother next argues that the trial court erred in disqualifying the parties' daughter as a witness at the hearing on this matter. The trial court decided to disqualify the daughter as a witness in this matter when she testified that, during the course of the ore tenus hearing, she and the mother had discussed how well the mother believed the case was progressing. Rule 615, Ala. R. Evid., provides that a trial court may, either on its own initiative or at the request of a party, order witnesses excluded from the courtroom in order to prevent their hearing the testimony of other witnesses. Excluding witnesses from the proceeding pursuant to Rule 615 ("the rule") is commonly known as "invoking the rule." In this case, the trial court stated that the mother had "invoked the rule."
The determination whether to allow the testimony of a witness based on a violation of "the rule" is within the trial court's discretion. Faulkner v. Walters, 661 So.2d 227 (Ala.1995); Christiansen v. Hall, 567 So.2d 1338 (Ala.1990); Nationwide Mut. Ins. Co. v. Smith, 280 Ala. 343, 194 So.2d 505 (1966); Raymond v. Pointer, 222 Ala. 518, 133 So. 260 (1931); Sloss-Sheffield Steel & Iron Co. v. Smith, 40 So. 91 (Ala.1905). "The purpose to be served in putting witnesses `under the rule' is that they may not be able to strengthen or color their own testimony, to testify to greater advantage in line with their bias or to have their memories refreshed, sometimes unduly, by hearing the testimony of other witnesses." II Charles W. Gamble, McElroy's Alabama Evidence § 286.01(1) (5th ed.1996) (footnote omitted). The mother contends that the exclusion of the daughter's testimony was too harsh a sanction under the facts of this case. "However, such a sanction may be imposed when a party or the party's attorney either contributes to or has failed to act reasonably to prevent the violation." Rule 615, Ala. R. Evid., Advisory Committee's Notes (citing Ex parte Faircloth, 471 So.2d 493, 497 (Ala.1985) (the trial court did not abuse its discretion in excluding the testimony of the petitioner's witness under the rule where the petitioner had invoked the rule and had failed to ensure that the witness stayed out of the courtroom)).
*131 In this case, the daughter testified that, during the course of the hearing and before the daughter was called to testify, the mother informed the daughter regarding her impression of whether the case was going in her favor, i.e., in favor of the mother's maintaining custody of the children. It is undisputed that the daughter wanted to live with the mother. Further, the evidence indicates that the mother had actively encouraged the children to be disruptive so as to discourage the father from seeking custody of them, and the record would support a conclusion that the children had indeed been disruptive. Therefore, the evidence would support a conclusion that, upon being informed of the mother's impression of the progress of the modification proceeding, the daughter would be likely to "strengthen or color [her] own testimony, [or] testify to greater advantage in line with [her] bias" in order to attempt to persuade the trial court not to modify custody so as to award custody to the father. See McElroy's Alabama Evidence § 286.01(1). Given the facts of this case, we cannot say that the trial court abused its discretion in excluding the daughter's testimony.
The mother also argues that the trial court erred in failing to apply the Custody and Domestic or Family Abuse Act, §§ 30-3-131 through -135, Ala.Code 1975, in reaching its custody-modification judgment. However, the mother did not make this argument before the trial court during the ore tenus hearing, and she did not assert an argument on this issue in her postjudgment motion. Therefore, the mother attempts to raise this issue for the first time in her brief on appeal. It is well settled that this court can review only those issues an appellant properly presented to the trial court and that it cannot consider an issue raised for the first time on appeal. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992); Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988).
The mother argues that the evidence does not support a modification of custody under the applicable standard of review. A parent seeking to modify custody must demonstrate that the change in custody would materially promote the child's welfare and that the disruption caused by the change in custody would be offset by the advantages of that custody change. Ex parte McLendon, 455 So.2d 863 (Ala.1984). The evidence in support of a modification of custody must be substantial, and it must demonstrate an overwhelming necessity for a change. Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App. 1992). "`The trial court is in the better position to evaluate the credibility of the witnesses ... and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.'" Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). Therefore, where a trial court modifies custody after receiving ore tenus evidence, its judgment is entitled to a presumption of correctness on appeal and that judgment will not be reversed unless it is so unsupported by the evidence as to be plainly and palpably wrong. Ex parte Patronas, supra; Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995).
The mother argues that the children are unhappy living with the father and that the father has physically abused the parties' daughter; therefore, she maintains that the trial court erred in awarding custody of the children to the father. The only evidence the trial court admitted pertaining to the incident in which the father allegedly hit the daughter was the son's testimony. The son did not describe the incident in any detail. We cannot say that *132 the evidence in the record pertaining to that incident is sufficient to demonstrate that the trial court's award of custody is unsupported by the evidence.
The record does indicate that the father's relationship with the children is strained and that the children would prefer to live with the mother. However, the record contains evidence indicating that the mother has encouraged the children to be disruptive and to create problems within the father's home; that evidence would also support a conclusion that the mother has contributed to the children's unhappiness while they have been in the father's home.
Since the date of the divorce judgment, the mother has, on separate occasions, been arrested on charges of public intoxication, soliciting prostitution, and criminal trespass; she has pleaded guilty to one count of soliciting prostitution. The mother testified that her relapse at the end of August 2001 was the only time she has recently used illegal drugs or alcohol. However, the testimony of other witnesses contradicts the mother's testimony on this issue. At the time they were first placed in their father's custody, the children made statements indicating that they had seen the mother using illegal drugs. The transcript of the conversations between the mother and R.H. supports an inference that the mother has continued an involvement with illegal drugs. Also, the mother's brother testified that in October 2001, the mother had asked him to assist her in purchasing alcohol; the mother denied that allegation. However, we note that during the course of the mother's testimony the trial court stated that it was having difficulty accepting the mother's testimony as credible.
Although the father's relationship with the children was, at the time of the hearing, less than ideal, the evidence in the record supports a conclusion that the mother had contributed to the difficulties between the father and the children by encouraging the children to misbehave while in their father's custody. The evidence also supports a conclusion that the mother's testimony that the relapse of her sobriety lasted only one weekend in August 2001 was not credible. Given the evidence in the record, we cannot say that the trial court erred in determining that the father had met his burden under Ex parte McLendon and in modifying custody of the children to the father.
The mother last argues that the trial court erred in its award to her of visitation with the children.
"`The determination of proper visitation... is within the sound discretion of the trial court, and that court's determination should not be reversed absent a showing of an abuse of discretion.' Ex parte Bland, 796 So.2d 340 (Ala.2000). `[C]ases in Alabama have consistently held that the primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances.' Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App.1987) (citations omitted). `When the issue of visitation is determined after oral proceedings, the trial court's determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987).' Dominick v. Dominick, 622 So.2d 402, 403 (Ala.Civ.App.1993)."
K.L.U. v. M.C., 809 So.2d 837, 840-41 (Ala. Civ.App.2001).
In K.L.U. v. M.C., supra, the trial court awarded the father visitation with the parties' minor child. However, rather than *133 setting forth the specific times for that visitation, the trial court allowed the parties to arrange visitation. The father appealed. This court reversed, holding that it was error for the trial court to allow the mother to determine the father's visitation schedule. K.L.U. v. M.C., supra. See also Bryant v. Bryant, 739 So.2d 53 (Ala.Civ. App.1999) (reversing the trial court's visitation award, which vested in the mother the total discretion to determine the father's visitation rights).
As it pertains to the mother's right of visitation, the trial court's judgment in this case states only "[t]hat the [mother] shall have the right of reasonable access of visitation with the parties' minor children." Given the authority of K.L.U. v. M.C., supra, and Bryant v. Bryant, supra, we conclude that the trial court erred in failing to set forth a specific schedule for the mother's visitation with the children. Therefore, we reverse that portion of the trial court's judgment that relates to visitation. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., dissents.
MURDOCK, Judge, dissenting.
I respectfully dissent; I would reverse the trial court's judgment in its entirety and remand the cause for a new trial. I write separately to comment only on the issue of the disqualification of the daughter's testimony.
This is a child-custody case. The trial court disqualified the testimony of one of the two children whose custody is at issue; the child was 13 years old at the time of the custody hearing. The trial court disqualified the daughter as a witness based on its conclusion that there had been a violation of "the rule," see Rule 615, Ala. R. Evid., and that this violation justified a disqualification of the witness. I can find no such violation of the rule in the record before us.